230 So.2d 549 (1970)
The HOME INSURANCE COMPANY OF NEW YORK and Mississippi Power & Light Company
v.
ATLAS TANK MANUFACTURING COMPANY, INC.
No. 45572.
Supreme Court of Mississippi.
January 12, 1970.
Rehearing Denied February 9, 1970.
Wise, Carter & Child, Green, Green & Cheney, M. Curtiss McKee, Bethel Ferguson, Jackson, for appellants.
Watkins & Eager, Carter, Mitchell & Robinson, William E. Suddath, Jr., Jackson, for appellee.
*550 BRADY, Justice:
This is an appeal from the Chancery Court of the First Judicial District of Hinds County, Mississippi, wherein the appellant sought indemnification from the appellee for damages in the amount of $40,000 suffered as a result of a settlement with the heirs of one Henry Reese. Henry Reese was working for the appellee when a piece of machinery, which he was helping to operate beneath the appellant's 13,000 volt utility distribution line, came in contact with it, thereby causing death by electrocution. A lengthy stipulation of facts by agreement was introduced into evidence. From the chancellor's denial of the right of indemnification claimed by appellants from the appellee, this appeal is perfected. We shall treat the insurer and the insured as one entity.
The testimony in the record and the stipulation of facts establish that, at some time between the middle of March 1965 and June 1965, the appellee filled in with dirt a ravined area, part of which it owns, part of which it leases, and part of which was a portion of the area dedicated as Pearl Street in the City of Vicksburg, but which has never been opened as a city street. The defendant, by filling and leveling this area, part of which was adjacent to and beneath the appellant's power line, thereby lowered the clearance of the appellant's power line above the ground from approximately thirty-three feet to approximately nineteen and a half feet. The appellant's power distribution line was constructed not upon land owned or leased by appellee but upon an easement on the side of the unopened city street. After acquiring the additional surface area by the filling operation and prior to the death of Henry Reese, the appellee used the new area by stacking thereon its manufactured butane tanks. The stacking area was east and west of the power line. The utilization of the area ultimately resulted in the appellee stacking underneath the distribution line a row of butane tanks. The distance between the tanks stacked in two tiers and the transmission line of appellant was reduced to fourteen and a half feet. The appellee had directed its employees to stack tanks in the new area which had been filled and leveled, and further required removal of the tanks from the aforementioned area onto trucks for delivery to purchasers. On August 21, 1965, though the appellee had been warned on August 20, 1965, by Mr. David I. Bridgers, appellant's superintendent, not to allow any persons to work near or within a ten foot distance of the power line while the dangerous low clearance condition of the low line existed, nevertheless the appellee required Henry Reese and other employees to work there.
In addition to the testimony and the stipulation, certain facts were admitted by the pleadings. These facts so admitted were: (1) That the heirs of Henry Reese were entitled to receive and recover the present net cash value of his life, his funeral expenses, loss of love, affection, society and companionship, pain and suffering, mental anguish and other damages allowed by law; (2) that the appellant, Mississippi Power & Light Company, was liable to the heirs of Henry Reese; (3) that the heirs of Henry Reese had a valid cause of action to recover damages for his death; (4) that the line of the appellant, Mississippi Power & Light Company, was constructed and maintained in accordance with the statutes of the State of Mississippi, the ordinance of the City of Vicksburg, and the franchise under which it operated in the City of Vicksburg; and (5) that after the filling was done by the appellee, Atlas Tank Manufacturing Company, Inc., under the power line of the appellant, Mississippi Power & Light Company, there existed an imminent and inherent danger of electrocution to the employees of the appellee working under and in close proximity to the distribution line of Mississippi Power & Light Company.
The record discloses that Mr. Dennis East, appellee's manager, in the spring of 1965 requested that one pole of the appellant's line be moved and that the transformer *551 bank on another pole be changed, and also that a second pole be installed prior to the grading and filling. Mr. East testified that with assurance from the appellant's supervisor, Mr. J.W. Hall, who inspected the area with Mr. East, that appellant would make the requested changes concerning the poles, the appellee proceeded with the grading and leveling. The appellee further asserts that from this time until August 21, 1965, several efforts were made to notify and notices and requests were transmitted from Atlas Tank Manufacturing Company, Inc., hereinafter designated as Atlas, to Mississippi Power & Light Company, hereinafter designated as MP & L, which sought the raising of the high powered lines and the moving of the pole but that MP & L, after it had moved one pole, did not complete the operation. The actual reason for not completing the work was that the appellee was unable to designate at that time the exact location of the second pole. Numerous issues are assigned and ably urged by appellants in excellent and voluminous briefs. It is unnecessary in determining the rights of the litigants to review all of the issues assigned and we will discuss only those essential to the disposition of this cause. The basic issue presented is: Was the admitted negligence of the appellant active, primary, or positive or was it passive, secondary, or negative? These words are the designations universally used to differentiate the indemnifiable from the non-indemnifiable types of negligence.
The general rule governing implied indemnity for tort liability is that a joint tort feasor, whose liability is secondary as opposed to primary, or is based upon imputed or passive negligence, as opposed to active negligence, or is negative negligence as opposed to positive negligence, may be entitled, upon an equitable consideration, to shift his responsibility to another joint tort feasor. However, where the fault of each is equal in grade and similar in character, the doctrine of implied indemnity is not available since no one should be permitted to base a cause of action on his own wrong. Thus, the determination of whether or not indemnity should be allowed must of necessity depend upon the facts of each case. 41 Am.Jur.2d Indemnity § 20 (1968); 42 C.J.S. Indemnity § 20 (1944); Werner, Contribution and Indemnity In California, 57 Cal.L.Rev. 490, 491 (1969); Davis, Indemnity Between Negligent Tort Feasors: A Proposed Rationale, 37 Iowa L.Rev. 517, 538 (1952); and Leflar, Contribution and Indemnity Between Tortfeasors, 81 U.Pa.L.Rev. 130, 147 (1932).
Two critical prerequisites are generally necessary for the invocation of noncontractual implied indemnity in Mississippi: (1) The damages which the claimant seeks to shift are imposed upon him as a result of some legal obligation to the injured person; and (2) it must appear that the claimant did not actively or affirmatively participate in the wrong. Bush v. City of Laurel, 215 So.2d 256 (Miss. 1968); Southwest Mississippi Electric Power Ass'n v. Harragill, 254 Miss. 460, 182 So.2d 220 (1966). In Bush v. City of Laurel, supra, this Court held that:
Except as provided by Mississippi Code 1942 Annotated section 335.5 (1956) there is no right of contribution in Mississippi where the parties are joint tort feasors or are in pari delicto  i.e., where the injury resulted from the concurring negligence of both parties. However, parties are not pari delicto when one party does the act or creates a dangerous situation and the other party is liable or because of passive negligence in failing to remedy the defect or because of a non-delegable statutory duty. (215 So.2d at 260.)
From the pleadings, stipulation, the above facts and law it is conceded that Atlas was actively negligent in reducing the height of the lines by building the fill, by stacking the tanks underneath the power lines, by requiring their removal by the Hyster under the power line, and in disregarding *552 the warning of MP & L of August 20, 1965. The question therefore presented for this Court is: On the facts, was MP & L "actively" or "passively" negligent in failing to raise the power line; or, stated differently, was the chancellor manifestly wrong in holding that MP & L was actively negligent? The negligence assigned to the appellant, MP & L, was that it had failed to inspect its lines and realize that the line was dangerously lower than required in the safety regulations; that it negligently delayed and failed to raise the lines after knowledge of the dangerous circumstances was made known to the appellant, or by the exercise of the highest degree of care required should have been known by MP & L, and that it did not raise the line when the original alterations were made.
This case is distinguishable from the Bush case, supra, on the facts. It should be noted that the object involved in the case at bar is no mere shallow ditch in the ground which might be stepped over or sidestepped and which offers no potential death dealing injury or consequence. The object involved in the present case is a 13,000 volt power line which of itself is extremely dangerous and capable of dealing instant death to any form of animate life which comes in contact with it.
If the chancellor is not to be sustained, as is urged by the appellant, in his finding that the negligence of the appellant, MP & L, was of an active nature and not merely passive, it will have to be because the chancellor's findings of fact in relation thereto are manifestly wrong or contrary to the overwhelming weight of the credible testimony. City of Jackson (Mississippi and Jackson Municipal Airport Authority) v. Delta Constr. Co., 228 So.2d 606 (Miss.) decided November 3, 1969; Tenneco, Inc. v. Barr, 224 So.2d 208 (Miss. 1969); Hicks v. Bolton, 223 So.2d 522 (Miss. 1969). It is imperative therefore that this Court review the pleadings and the pertinent testimony of all witnesses together with all stipulations of fact mutually agreed upon in order to ascertain what elements constitute the negligence which the chancellor found constituted the active participation therein by the MP & L.
It is an established fact that prior to March 1965 MP & L, in accordance with a request, and not in violation of its rate schedule and service policy, had previously located a power pole with a transformer bank situated thereon on the property of the appellee. The appellee requested the appellant to move this pole in order that its trucks more easily might be turned around and placed at points on the property of the appellee. In lieu of this pole appellee requested that two poles be erected there in order that more ground might be made available for use by the appellee, including the area in which the trucks could turn around. The record discloses that on March 8, 1965, the appellant came upon the premises of the appellee prepared to install the two poles. The appellee at that time had not decided exactly where the plant enlargement would be located and what portion of the surface would be utilized and therefore requested that MP & L locate only one pole, and designated the spot. The pole was installed and the transformer bank changed so as to increase the power output for appellee. Since appellee was unable to designate the point where the second pole was to be placed at that time, MP & L concluded this partial installation.
On or before March 8, 1965, the appellee began to fill in the gulleys and level off the hills as appellee claims it had advised the appellant it would do, in order to obtain more available surface land for use. The exact acreage to be obtained is not disclosed in the record but the next notice which was given to MP & L relating to the installation of a second pole or the raising of the power line extending over the land of the appellee was about the last of May or the first of June 1965. There is a dispute between the witnesses of the appellant and the witness of the appellee as to whether or not notice was actually given *553 at the times alleged and whether or not the appellant knew, because of this notice and because of examinations made by agents of the appellant, that a dangerous condition existed because the appellee had built a fill under the power lines. We will detail these disputed facts.
Around the last of June or early July 1965 Mr. Dennis East, Plant Manager of appellee, testified that he called Mr. Herman Cooper, Assistant Divison Engineer of the appellant, for the purpose of requesting that he raise the power line which extended over and across the lands of the appellee. He was not able to contact Mr. Cooper because of his absence. He requested Mr. Cooper's secretary to notify Mr. Cooper that he had called and for him to return the call. Mr. Cooper did so but, failing to contact Mr. East, did not try again. Mr. East again telephoned Mr. Cooper and talked to him over the phone. In this conversation Mr. East advised Mr. Cooper that he was having difficulty in operating his cranes on the lot under the line of MP & L and that since his Board of Directors was coming he did not want them to see the crane operating in that close proximity to the power line. In substance, Mr. Cooper was therefore advised that a dangerous condition was in existence under the power line, irrespective of how high the crane may have been from the ground. In response to this call Mr. Cooper advised Mr. East that it was impossible for him to come at that time because of preexisting commitments on work which was in progress. The record indicates that at the time Mr. East talked with Mr. Cooper the appellee had filled in the gulleys, leveled off the hills and filled in the yard area of appellee's plant and that appellee's cranes or Hysters were operating under and around the appellant's power line, the height of which had been reduced from thirty-three feet to nineteen feet, six inches. In addition thereto the record reveals that the appellee had extended its area by utilizing the area of a public street which had never been opened, and by acquiring additional property which it had leased. The record is clear that under the power line and adjacent thereto the appellee had stacked a row of cylindrical butane tanks thirty-seven inches in diameter. These tanks were apparently five feet in length and were stacked two tanks in height and twenty tanks in length approximately under appellant's power line. These tanks were stacked there by the utilization of a loading crane known as a Hyster.
On cross-examination appellant's agent, Mr. Jack W. Hall, Division Engineer, testified that he went out and made an inspection and believed there was a bulldozer being operated by the appellee filling in the gulleys and valleys and leveling the hills in enlarging the plant yard. It is disputed that the appellant had actual knowledge, though Mr. Herman Cooper, Assistant Division Engineer, who prepared the plans for removing the pole and placing the new poles and transformers, saw that the distance between the 13,000 volt line and the ground had been reduced from thirty-three feet to nineteen feet, six inches. The appellee asserts that the appellant knew this to be a fact because Mr. Hall, appellant's division engineer, was present when the bulldozer was operating and saw this reduction in height as it was taking place. The proof furthermore shows that on Friday, August 20, 1965, one day before the fatal accident occurred, since Mr. East's efforts to have the poles raised had failed, appellee's manager, Mr. Studdard, Mr. East's superior, telephoned Mr. David I. Bridgers, the superior of Mr. Herman Cooper, and advised him that a dangerous condition existed on the yard due to the fact that the Hyster or crane was having to operate under their power line, the height of which had been lowered because of the construction of the fill, and that someone was going to be killed if something wasn't done about it. This call occurred at approximately 5:00 p.m., which is the time when appellee's plant operation ceased working for the day. Mr. Bridgers *554 advised that he would investigate and take such steps as necessary on Monday morning. He stated that he would contact his work crews and that on Monday morning the matter would receive attention. Mr. Bridgers then advised Mr. East not to allow any work to be done under the line. Mr. Bridgers stated that he thought appellee was operating a fifty foot crane. The record discloses that on Saturday, August 21, 1965, in accordance with the directions of the appellee, Henry Reese, a Negro employee, was engaged in fastening the crane's line to a butane tank, placed under the transmission line, which was to be loaded on a truck for delivery. The Hyster thus engaged in picking up the butane tanks and placing them in trucks came in contact with appellant's 13,000 volt line, resulting in instantaneous electrocution of Henry Reese.
The chancellor found as a fact that a more than reasonable effort was made by the appellee to have the appellant elevate the line in question. He further found that the appellant knew of the impending danger and that thus any negligence on the part of the appellant was active and not passive.
It is doubtful that a more vivid example of virulent negligence on the part of the appellee or gross negligence on the part of the appellant can be found in our decisions. This fact was apparent to Mr. Joshua Green, the articulate attorney and witness for MP & L who, in asserting that the appellant's settlement was not voluntary, testified that the appellant was negligent if for no other reason than the facts and rule of law as announced in Mississippi Power & Light Company v. Walters, 248 Miss. 206, 158 So.2d 2, 160 So.2d 908 (1963). This able attorney cited other cases, including Delta Electric Power Association v. Burton, 240 Miss. 209, 126 So.2d 258, 866 (1961) and Mississippi Power Company v. Thomas, 162 Miss. 734, 140 So. 227, 84 A.L.R. 679 (1932), which led him to the conclusion that MP & L was negligent. He sagely advised settlement with the heirs of Henry Reese rather than put in issue before the Hinds County jury the question of whether the appellant's negligence made it a joint tort feasor and in pari delicto with appellee and run the great risk of a very substantial judgment being rendered against the appellant. Therefore, there can be no passive negligence where such a hazard is involved, as was held by this Court, when speaking through Justice V.A. Griffith, in Mississippi Power Company v. Thomas, supra:
And manifestly the duty required of the company in respect to the maintenance of its electric wires is an active duty  not merely a passive obligation to act only when some third person has gone to the trouble to volunteer information to the company of a particular danger at a particular place. * * *
But in the case at bar the evidence discloses without serious dispute that the offending wire had been in a dangerously low position for a period of at least one week, and this over a frequently traveled public highway within the corporate limits of the town. Much of the evidence is to the effect that the dangerous condition had existed for ten days or two weeks. Taking, however, the shorter period of time first mentioned, that is to say, one week, we do not hesitate to say that, as a matter of law, this was a period of time sufficient to charge the company with constructive knowledge. To hold otherwise would be either to deny the duty of inspection, or else to say that the periods thereof could be so far apart as to be of little practical value. (162 Miss. at 739, 140 So. at 228.) (Emphasis added.)
We feel that the record substantiates this holding and since the joint tort feasors were thus in pari delicto there can be no recovery by indemnity.
In passing, the error urged by the appellant that there is contractual liability because of the provisions in the service policy is without merit; however, we expressly *555 pretermit consideration of all other errors assigned or questions raised since the determination that the negligence of the appellant was active is dispositive of the rights of the parties to this cause.
Therefore, we do not reach the other errors urged or defenses in response thereto by appellant and appellee, including the question of whether or not additional liability to the Workmen's Compensation Act can be imposed upon the appellee because of the death caused by the joint negligence of appellee and the appellant.
We cannot conclude that the chancellor was manifestly wrong or that his finding of facts was contrary to the overwhelming weight of the credible evidence. Therefore, the judgment is affirmed.
Affirmed.
GILLESPIE, P.J., and RODGERS, PATTERSON and SMITH, JJ., concur.