**John McPHEE, Jr., et al., Plaintiffs,**

v.

**OLIVER TYRONE CORPORATION,**
**Defendant.**

**No. EC 72-25.**

United States District Court,
N. D. Mississippi, E. D.

Dec. 20, 1972.

J. Joshua Stevens, Jr., of Tubb & Stevens, West Point, Miss., Howard A. Davis, Milwaukee, Wis., for plaintiffs.

James E. Price, Corinth, Miss., for defendant.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

This action is before the court on defendant's motion for summary judgment.[1] The court has considered the record in the action, including affidavits filed by the parties, briefs and arguments of counsel, and now makes the findings of fact and conclusions of law which follow.

Corinth Machinery Company (Corinth) at all pertinent times has been and is now engaged in the business of assembling, manufacturing and selling, throughout the United States and in

---

1. The original defendants were Tyrone Hydraulics, Inc., and Oliver Tyrone Corporation. At the time of the design, manufacture and sale of the hydraulic carriage drive, the product which is involved in the action *sub judice*, Oliver Tyrone Corporation operated the factory which designed, manufactured and sold the drive through an operating division known as "Tyrone Hydraulics Division of Oliver Tyrone Corporation". The other defendant, Tyrone Hydraulics, Inc., was chartered by the State of Delaware on September 30, 1965, and succeeded to Oliver Tyrone Corporation's ownership and operation of the factory involved. Tyrone Hydraulics, Inc. has been dismissed as a party defendant to this action. Only Oliver Tyrone Corporation remains as a defendant.

many foreign countries, sawmills of all types and kinds, portable and otherwise, for use by those engaged in the sawmill industry.

Defendant Oliver Tyrone Corporation (Tyrone), during the time pertinent to this action, designed, manufactured, assembled and sold to Corinth a hydraulic carriage drive (carriage drive) which Corinth used in the assembly and manufacture of sawmills marketed by Corinth.

Tyrone manufactured and sold this particular carriage drive to Corinth and many other sawmill manufacturers throughout the country over a period of many years. The control lever of the unit was mounted by means of a handle bracket and connecting link directly on the unit itself. Tyrone did not design, manufacture or sell any type of linkage which would enable the control lever on the carriage drive to be removed from the unit itself and reinstalled at a place remote from the unit.

In May 1963, Corinth, through its distributor in the Michigan and Wisconsin area, agreed to replace an existing sawmill for Erickson Hardwoods, Inc. (Erickson) in Onalaska, Wisconsin. Corinth sent its sales representative to Onalaska to determine what portion of the existing mill could be used and what portion Erickson would have to purchase. It was the responsibility of the sales representative to determine the general layout of the existing mill in order that the new portion of the mill could be incorporated into the complete operation, with the portion which Erickson would retain.

After receiving the information from the sales representative, the chief design engineer of Corinth (engineer) determined that the carriage drive manufactured and sold by Tyrone would be best suited for the Erickson mill. Accordingly, he incorporated this carriage drive into the assembled mill and proceeded to purchase the unit from Tyrone. The delivery was made, and Tyrone did not, at any time thereafter, have any connection with the sale, delivery, or installation of the carriage drive into the Erickson mill. When received by Corinth the carriage drive was a packaged unit with a control lever mounted by means of a handle bracket and a connecting link directly on the side of the unit.

The engineer determined from the information supplied to him by the sales representative that a longer control lever for the carriage drive was necessary on the Erickson mill in order that the carriage drive might be operated and controlled by the sawyer at a distance from the unit itself. To supply this need, the engineer designed and Corinth manufactured an entirely new control lever which incorporated the electric controls for the sawmill, and to which was attached an extension consisting of an iron right angle and rod, referred to in the record as a "linkage". This alteration made the new control lever heavier than the one which came with the unit. The control lever mounted on the unit when received by Corinth was removed and discarded.

Corinth then mounted the carriage drive on the frame husk; and this complete assembly, together with the unattached linkage and control lever and other related items, was shipped to Erickson for installation. After the entire sawmill had been installed by Erickson, a representative of Corinth went to the mill to inspect the installation and to test the mill in operation. The representative then observed that the control lever which had been designed, manufactured and installed on one end of the linkage by Corinth had been modified during installation by bending the top portion of the lever forward at an angle of approximately 30° or 40° from vertical. This modification was for the convenience of the sawyer and did not affect the operation of the carriage drive. As has been stated, Tyrone had nothing whatever to do with the carriage drive, its subsequent modification, or its installation into the mill at any time after the drive was sold and delivered to Corinth.

Plaintiff, John McPhee, Jr. (McPhee), a sawyer for Erickson, was seriously injured on or about May 28, 1965 while engaged in operating the mill, when the log carriage unexpectedly moved and forced him into the saw blade, amputating both of his legs. McPhee contended that the carriage moved without any action on his part, and that this could not have happened if there had been a locking device incorporated into the control lever. The lever did not have such a device, nor was such a device incorporated into the lever which was attached to the carrier drive when the unit was manufactured and sold to Corinth by Tyrone.

McPhee and his wife sued Corinth and Tyrone in the United States District Court for the Western District of Wisconsin for damages sustained by them as the result of the incident aforesaid. McPhee and his wife contended that Corinth and Tyrone were negligent in furnishing a carriage drive without a built-in device to lock it when not in use. They also charged Corinth with negligence in failing properly to inspect and supervise the installation of the sawmill. The court dismissed Tyrone because of lack of jurisdiction over the person, Rule 12(b)(2) F.R.Civ.P. A judgment was entered in the action against Corinth in favor of McPhee for $354,349.46 with interest and costs. Mrs. McPhee recovered a judgment against Corinth for $150,000. and interest and costs.[2]

Corinth was unable to respond to the judgment and negotiated a settlement with McPhee and his wife. Corinth's liability carrier paid the limits of its policy, amounting to $100,000. Corinth also paid $100,000, making the total settlement the sum of $200,000. As a part and parcel of the settlement agreement Corinth assigned and transferred to McPhee and his wife such claim or claims as Corinth might have for indemnity or contribution against Tyrone.[3]

After the execution of the assignment above mentioned McPhee and his wife filed the action *sub judice* to recover the sum of $150,000 from Tyrone.

One theory advanced by plaintiffs to sustain their right of action in this suit is that Corinth's negligence was passive in nature while Tyrone's was active. Plaintiffs theorize that the carriage drive in question was defective in design and manufacture when sold to Corinth because a locking device was not provided, and that Tyrone was guilty of active negligence in furnishing Corinth the defective unit for incorporation by Corinth into the sawmill sold to Erickson. Plaintiffs contend that Corinth's negligence in failing to install such a de-

---

2. The court submitted the case to the jury on a Special Verdict, pursuant to Rule 49(a) F.R.Civ.P. The question submitted to the jury, which is pertinent to the issues in the action *sub judice* was: "Question 1

Was the defendant The Corinth Machinery Company negligent in respect to the following

A. Failing to provide a locking device?
　　　　　Answer　　Yes
　　　　　　　　　　(yes or no)
B. Failing properly to inspect and supervise the installation?
　　　　　Answer　　Yes
　　　　　　　　　　(yes or no)"

3. The pertinent parts of the settlement agreement are:
　　(1) Corinth has a claim against . . . Oliver Tyrone Corporation, a Pennsylvania corporation, . . . for contribution or indemnity arising out of the judgment in favor of McPhee against Corinth.
　　4. Corinth further hereby assigns to McPhees its claim, if any, against Tyrone . . . arising out of the entry of judgment in favor of McPhees against Corinth on May 5, 1969, as amended on March 5, 1970, and rights arising by reason of the payment of $100,000.00 by Corinth over and above policy limits, including but not limited to:
　　(a) Corinth's claim against Tyrone for contribution and indemnification against Tyrone because of Tyrone's failure to supply a locking device on the hydraulic drive system involved in the McPhee accident and arising because of Tyrone's failure to advise Corinth of the alleged danger in not having a locking device on the hydraulic drive system involved in the McPhee incident."

vice in the control lever which Corinth designed, manufactured and added to the unit before the carriage drive was made a part of the Erickson mill, was brought about by Tyrone's failure to incorporate one in the lever on the unit in the first place. Thus, plaintiffs say, Corinth's negligence was passive, not active, and that they are entitled to indemnity from Tyrone.

A second theory on the passive-active negligence issue is that the failure of Corinth properly to inspect and supervise the installation of the sawmill, was occasioned by Tyrone's failure to furnish Corinth with proper instructions for the inspection and supervision of the installation of the hydraulic system, and to warn Corinth of the dangers inherent in using the hydraulic system without a locking device. They characterize Tyrone's negligence as active and Corinth's negligence as passive in this regard.

Plaintiffs recognize the rule in Mississippi to be that joint tort-feasors in *pari delicto* are not entitled to indemnity from each other.[4] Smith Petroleum Service, Inc. v. Montsano Chemical Co., 420 F.2d 1103 (5th Cir. 1970); Home Insurance Co. of N. Y. v. Atlas Tank Mfg. Co. (1970) Miss., 230 So.2d 549; Bush v. City of Laurel (1968) Miss., 215 So.2d 256.

Plaintiffs also recognize the rule which prevails in Mississippi, except as changed by statute[5] to be that no right of contribution exists where parties are joint tort-feasors or are in *pari delicto*. Bush v. City of Laurel, *supra*; Standard Oil Co. of Ky. v. Illinois Central Railroad Co., 421 F.2d 201 (5th Cir. 1969); Klaas v. Continental Southern Lines, 225 Miss. 94, 82 So.2d 705 (Miss.1955).

Plaintiffs contend, however, that Corinth is not in *pari delicto* with Tyrone because Tyrone created the dangerous situation resulting in the injury and Corinth's only contribution was the failure of Corinth to remedy the situation.

Plaintiffs characterize Tyrone's negligence as "active", and Corinth's as "passive". Thus, they assert, by virtue of Corinth's assignment, the right to indemnity from Tyrone. Mississippi recognizes the rule upon which the right is asserted. The Mississippi court in Bush v. City of Laurel, *supra*, quoted with the approval from a Mississippi case decided by the Fifth Circuit, St. Louis & San Francisco Railway v. United States, 5 Cir., 187 F.2d 925 (1951), as follows:

> The rule is clearly set out in St. Louis & San Francisco Railway v. United States, 187 F.2d 925 (5th Cir. 1951): "[I]n Mississippi, as generally elsewhere, a right of indemnity * * * arises in favor of one not actively at fault against an active wrongdoer." 187 F.2d at 927. 215 So.2d at 260

The general rule governing implied indemnity for tort liability, as adopted by the Mississippi Supreme Court, is aptly stated in Home Insurance Co. of N. Y. v. Atlas Tank Mfg. Co., *supra*, where the court said:

> The general rule governing implied indemnity for tort liability is that a joint tort feasor, whose liability is secondary as opposed to primary, or is based upon imputed or passive negligence, as opposed to active negligence, or is negative negligence as opposed to positive negligence, may be entitled, upon an equitable consideration, to shift his responsibility to another joint tort feasor. However, where the fault of each is equal in grade and similar in character, the doctrine of implied indemnity is not available since no one should be permitted to base a cause of action on his own wrong. Thus, the determination of whether or not indemnity should be allowed must of necessity depend upon

---

4. The rights of the parties in this action are determined by Mississippi law. Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

5. Miss.Code Ann. § 335.5 (1956)

the facts of each case. (Miss.1970) 230 So.2d 549, 551.

The *Home Insurance* court set forth two critical prerequisites generally necessary for the invocation in Mississippi of non-contractual implied indemnity, such as is involved in the action *sub judice*. The court said:

> Two critical prerequisites are generally necessary for the invocation of non-contractual implied indemnity in Mississippi: (1) The damages which the claimant seeks to shift are imposed upon him as a result of some legal obligation to the injured person; and (2) it must appear that the claimant did not actively or affirmatively participate in the wrong. Ibid.

As stated in the *Home Insurance* case, whether indemnity is enforceable in the action *sub judice* depends upon the facts found to exist in the case. The first prerequisite exists here. The damages which plaintiffs seek to shift to Tyrone, by virtue of Corinth's assignment, were imposed upon Corinth as the result of the Wisconsin judgment. Plaintiffs' right to recover hinges, therefore, on the determination of the question of whether Corinth actively or affirmatively participated in the wrong bringing about the injury. The court must find the answer in the facts of the case.

■ The record reflects without substantial dispute that Tyrone designed, manufactured, and sold the carriage drive without providing a locking device —that is a means of locking the carriage drive so that it would remain in a neutral stance while not in use, so as to guard against accidental or otherwise unintentional activation of the drive. The Wisconsin jury used the lack of such a device to fasten liability for the injury on Corinth. It is also uncontradicted that Corinth was an experienced manufacturer and distributor of sawmills. It is apparent to the court that knowledge of the need for such a device was as available to Corinth as to Tyrone. When Corinth removed the control lever from Tyrone's unit, and sub-

stituted a lever designed and manufactured by Corinth, the failure to provide a locking device became, in the opinion of the court, an active participation in the wrong. The court, therefore, characterizes Corinth's negligence in this regard as "active" rather than "passive."

■ Plaintiffs' second proposition that the failure of Tyrone to furnish Corinth with proper instructions for the inspection and supervision of the installation of the hydraulic system, and to warn Corinth of the inherent danger of using the system without a locking device brought about the failure of Corinth to properly inspect and supervise the installation of the sawmill meets the same fate at the hands of the court. The record reflects that Corinth mounted the carriage drive, or hydraulic unit, on the frame husk before shipping the mill to Erickson. The mill was installed by Erickson. A representative of Corinth visited the mill to inspect it and to make a trial run. The representative found that Erickson had modified one end of the linkage supplied by Corinth by bending the top portion of the lever forward at an angle of approximately 30° or 40° from verticle. This was done for the convenience of the sawyer who would operate the mill. This change was not questioned by Corinth's representative and the installation was approved. The record reflects, however, that this change added weight to the lever and increased the stress or strain upon it with the result that the carriage drive would move with greater ease from a neutral to an active position, thereby increasing the risk of an accidental or unintentional activation of the mill. Tyrone was not involved in any way with the change made on the lever. The court finds that the negligence of Corinth in failing properly to inspect and supervise the installation of the mill was "active" in nature rather than "passive" as plaintiffs contend.

The pleadings, affidavits and admissions on file reflect that there is no genuine issue as to any material fact as regards plaintiffs' claim that they are en-

titled to recover on the grounds that Tyrone was guilty of active or primary negligence and that Corinth's negligence was passive or secondary in nature.

The court concludes that Tyrone is entitled to a judgment as a matter of law on Count One of the Amended Complaint. Rule 56(c) F.R.Civ.P.

Count Two of the complaint is cast under the theories of implied warranty and strict liability in tort.

The omission of a locking device on the control lever was obvious and apparent to all who might undertake to operate the mill. In operating the carriage drive the operator moved the lever from a neutral position to one which would activate and drive and move the carriage. When returning the lever to neutral, the absence of a device by which the lever could be locked in that position was obvious and apparent to a casual observer. The defect was not latent and concealed. The Mississippi Supreme Court in Harrist v. Spencer-Harris Tool Co., 244 Miss. 84, 140 So.2d 558, 561 (1962), said:

> It has been stated that neither a general or an implied warranty covers external and visible defects which are plain and obvious to the purchaser upon mere inspection with the eye.

There was no duty imposed on Tyrone to warn Corinth of the obvious defect. Harrist v. Spencer-Harris Tool Co., *supra*, at 562.

> No duty rests upon a manufacturer or seller to warn a purchaser of a dangerous design which is obvious. If this were not true, a manufacturer could not design and sell a pocket knife, axe, planer or gun.

The court concludes that plaintiffs cannot recover under Mississippi decisions on the theory of the breach of an implied warranty.

The final theory upon which plaintiffs seek to recover is that the strict liability in tort. This theory was adopted in Mississippi in State Stove Manufacturing Company v. Hodges (1966) Miss., 189 So.2d 113. To recover under this theory the claimant must show that the product reached the user or consumer without substantial change in the condition in which it was sold. State Stove Manufacturing Company v. Hodges, Miss., 189 So.2d at 118. It is undisputed in the case *sub judice* that the control lever, which is the portion of the hydraulic carriage drive alleged to have been defective because of the absence of the locking device, was removed and discarded by Corinth, and a completely new control lever designed and manufactured by Corinth, and attached to the carriage drive before delivery and installation of the mill. It is the opinion of the court that a substantial change was made in the unit after its sale by Tyrone and before the unit reached the user or consumer. Plaintiffs cannot, therefore, recover under the theory of strict liability in tort.

The defendant contends that the action is barred by either the three or the six year statute of limitations.[7] In support of this contention defendant advances the argument that the statute of limitations in a suit for breach of an implied warranty begins to run when the contract is breached by delivery of defective goods, citing to sustain the position the following Mississippi cases: Johnson v. Crisler, (1930) 156 Miss. 266, 125 So. 724; Hedges v. Louisiana Agricultural Supply Company, (1960) 238 Miss. 805, 120 So.2d 136, and M. T. Reed Construction Co. v. Jackson Plating Co., (1969) Miss., 222 So.2d 838. *Johnson* and *M. T. Reed* were considered and distinguished recently by the Fifth Circuit in a products liability case. Ala. R. R. Co. v. Allied Chemical, et al. 5 Cir., 467 F.2d 679, (1972). The court there rejected the contention that the Mississippi Supreme Court had or would adopt a rule that in all products liability cases the statute of limitation would begin to

---

7. The three year statute is Miss.Code Ann. § 729 (1972 Cum.Supp.). The six year statute is Miss.Code Ann. § 722 (1956).

608

run from the date of the sale of the product.

In Ala. R. R. Co. v. Allied Chemical, et al., the court said:

We realize that manufacturers should not be held liable indefinitely for defects in every article they introduced into the stream of commerce. We decide here only that Mississippi courts would not use so blunt an instrument as the statute of limitations to shield them in a products liability case in which the injured party has no hint of the defect in the product until after the limitation period has run.

It is not necessary for the court to examine in detail the several Mississippi cases dealing with the subject. Suffice to say, the question is now moot in view of the court's holding that plaintiffs cannot recover in any event.

In summary, the court holds that there is no genuine issues as to any material fact in the case *sub judice*, and that defendant is entitled to a judgment as a matter of law.

An appropriate judgment will be entered by the court.