**AMERICAN FIRE & CASUALTY COMPANY, Plaintiff-Appellant,**

v.

**STEWART–SNEED–HEWES, INC., Defendant-Appellee.**

No. 72–2797.

United States Court of Appeals, Fifth Circuit.

May 17, 1973.

Rehearing Denied June 13, 1973.

David L. Cobb, Harry R. Allen, Gulfport, Miss., for plaintiff-appellant.

Rae Bryant, Gulfport, Miss., for Thompson & Stewart, and others.

Hollis C. Thompson, Jr., Gulfport, Miss., for Thompson.

Before COLEMAN and SIMPSON, Circuit Judges, and ESTES, District Judge.

ESTES, District Judge:

American Fire and Casualty Company, claiming that its former agent, Stewart-Sneed-Hewes, Inc. (SSH), issued an insurance policy against the instructions of American Fire, brought this suit to obtain reimbursement from SSH for a $14,694.00 payment American Fire made for a claim on that policy. The jury found for the defendant, and American Fire appeals the trial judge's denial of its motions for a directed verdict and judgment notwithstanding the verdict.

In 1969, SSH, an independent insurance agent, was authorized to write insurance on American Fire, as well as on many other insurance companies, in the area of Gulfport, Mississippi. The agency contract between American Fire and SSH provided that all policies would be written in accordance with the manuals and written instructions of American Fire issued to SSH, and that SSH would be liable for any loss sustained by American Fire due to any negligent delay in compliance with such instructions by SSH.

On June 3, 1969, Tom Rowe, the vice president of American Fire's Property Division, sent the following letter to SSH concerning a policy issued for Goldin & Schwartz, Inc.:

"We have just received this builders risk which is being processed, but would like to remind you that we *prefer* not to write any further builders risk for the balance of this summer. This, of course, is due to the present windstorm season, etc. We would appreciate your marking your files to this effect." [emphasis added]

On June 5, 1969, Mrs. Cecile Price, who was then a clerk in the property section of SSH,* responded with the following note:

"With regard to your note about the above risk [the Goldin & Schwartz policy], the Builder's Risk is to be cancelled as of this date—and we will abide by your request concerning B. Risks through the summer—"

It appears from the record that SSH did not write any more builders risk insurance on American Fire until August 15, 1969, when a builders' risk policy was issued to Continental Construction Company for an apartment construction project, then sixty percent complete. The residents of Gulfport were then aware of the presence of Hurricane Camille in the Gulf of Mexico; however, the hurricane had not reached the longitude and latitude at which the writing of property insurance would be suspended. Three days later, Hurricane Camille struck Gulfport, causing extensive damage, including damage to the Continental apartment project. American Fire received the notice of loss from Continental at approximately the same time it received its notification that the policy had been issued by SSH.

In a letter dated September 4, 1969, Rowe asked J. C. Thompson, president and an agent of SSH, to advise him about this policy, since "[i]t was agreed by your office quite some time ago that we would not write any other builders' risks during the storm season. . . ." Thompson replied by letter on September 16, 1969, that "it is quite obvious that this office did not follow your instructions." Thompson took the responsibility for the situation, but stated that neither he nor Sessions Hootsell, vice president and an agent of SSH, had seen the June 3 letter, and that many builders risk policies were placed by SSH without an agent instructing the clerk on which specific insurance company the policy should be written.

American Fire subsequently paid Continental $14,694.00 for damage to the insured project covered by the policy. It now seeks reimbursement from SSH for the loss, alleging SSH is liable to American Fire for failing to follow American Fire's instructions.

The jury having found the facts adversely to American Fire, American Fire appeals the trial court's denial of its motions for a directed verdict and subsequently for a judgment notwithstanding the verdict. Appellant contends that its motions should have been granted because the evidence overwhelmingly proved that its June 3 letter contained written instructions to SSH not to write any builders risk insurance on American Fire throughout the summer, or even if SSH was not bound by the June 3 letter, it was bound by the June 5 response of Mrs. Price, who acted with actual or apparent authority to so bind SSH.

■ The standard for deciding motions for a directed verdict or a judgment notwithstanding the verdict was clearly stated in Boeing Company v. Shipman, 411 F.2d 365, 374 (5 Cir. 1969). If, upon considering all the evidence, the trial court determines that "the facts and inferences point so strongly and overwhelmingly in favor of one party . . . that reasonable men could not arrive at a contrary verdict," it should grant the motions. If there is substantial evidence opposed to the motions, so that "reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied. . . ."

■ With regard to its contention that its June 3 letter contained a written instruction for SSH not to write any more builders coverage during the summer months, American Fire points to the voluntary cancellation of the Goldin & Schwartz policy, by SSH and Thompson's statement in the September 16 letter that SSH "did not follow your *instructions*." [emphasis supplied] How-

* At the time of the trial, Mrs. Price was no longer employed by SSH.

ever, both Thompson and Mrs. Price, the witnesses who testified concerning the instruction issues, asserted that the June 3 letter contained only a "preference," not an "instruction." They also testified that in the insurance practice, an independent agent would attempt to follow a company's preference, but when the agent considered it necessary to serve a person seeking insurance, he would write insurance on a company contrary to its preference. Furthermore, SSH introduced into evidence, to show the strong language of an *instruction*, a 1966 American Fire bulletin to its agencies which read, "Effective immediately, *we will not entertain any coverage* on a restaurant account that does not have an approved type extinguishing system currently installed." [emphasis added] In view of the conflicting evidence, we cannot say that reasonable men could not conclude that American Fire's June 3 letter expressed merely a preference instead of an instruction.

 The evidence concerning Mrs. Price's actual or apparent authority to so bind SSH by her June 5 note is also conflicting. Mrs. Price was a clerk with SSH and as such had no authority herself to limit the type of insurance the agents could write; only an agent could do that. There was testimony that Mrs. Price obtained the approval of one of the SSH agents to reissue the Goldin & Schwartz policy and to write a note to American Fire to inform it of the reissuance; however, there was also evidence to the effect that in the SSH office clerks would prepare the paper work for a reissuance of insurance for a wide variety of reasons and present the proposed reissuance to an agent without necessarily informing the agent of the specific reason for reissuance. Because there could be a multitude of reasons for reissuing insurance, the agents directed their concern toward the accuracy of the new policy in a reissuance instead of determining the reason for reissuance. Hence, reasonable men could conclude that Mrs. Price had obtained approval for the reissuance of the Goldin & Schwartz policy by an agent without specifically informing the approving agent that American Fire preferred not to write any more builders risk insurance during the summer and without obtaining authority from the agent to bind SSH not to issue any such insurance on American Fire.

As to Mrs. Price's apparent authority, she did correspond with American Fire as part of her duties as clerk. If she had been authorized by an agent to do so, she could have bound SSH by her June 5 letter, and, furthermore, American Fire was not able to tell from the June 5 letter itself that she had not obtained such authority from an agent. However, it is uncontroverted that American Fire, through its vice president Rowe, knew Mrs. Price was a clerk, not an agent, and had no personal authority to bind SSH. No evidence was presented to show that Mrs. Price's previous correspondence with American Fire included instances in which she was authorized to limit the insurance which SSH agents could write. Appellant had the burden of proving Mrs. Price's authority or apparent authority. United States Fidelity & Guaranty Co. v. Arrington, 255 So.2d 652 (Miss.1971). The evidence appellant produced was not so overwhelming that reasonable men must conclude that American Fire could rely upon Mrs. Price's statement as being authoritative.

After reviewing all the evidence in the record, we find there was ample evidence to support the jury findings and that the district judge properly denied the motions for directed verdict and judgment notwithstanding the verdict. The judgment is

Affirmed.