The **ALABAMA GREAT SOUTHERN RAILROAD COMPANY**, Appellant,

v.

**CHICAGO & NORTHWESTERN RAILWAY COMPANY**, Appellee.

No. 73–1569.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 15, 1974.

Decided March 12, 1974.

Rehearing Denied April 10, 1974.

Doris J. Banta, St. Louis, Mo., for appellant.

John C. Shepherd, St. Louis, Mo., for appellee.

Before VAN OOSTERHOUT, Senior Circuit Judge, and LAY and STEPHENSON, Circuit Judges.

VAN OOSTERHOUT, Senior Circuit Judge.

This is an action by The Alabama Great Southern Railroad Company (AGS) against the Chicago & Northwestern Railway Company (Northwestern) seeking to recover sums which it paid to settle a claim asserted against it by one of its employees, for which AGS asserted Northwestern was obliged to indemnify it. Diversity of citizenship and the jurisdictional amount under 28 U.S.C. § 1332 were asserted and established. After trial to a jury and a verdict for the defendant, the plaintiff filed alternative motions for a judgment n. o. v. or for a new trial, which motions were denied by Judge H. Kenneth Wangelin of the United States District Court for the Eastern District of Missouri. The plaintiff appeals from the judgment entered pursuant to the jury verdict and from the order denying the motions for a judgment n. o. v. or a new trial. The judgment and order are affirmed.

## FACTS

AGS and Northwestern are both engaged in the railroad business as interstate carriers of freight, pursuant to authority from the Interstate Commerce Commission. AGS is owned by the Southern Railway Company and is a part of the Southern Railroad System.

Early on March 10, 1969, a train operated by the plaintiff made a switching stop near Dragon, Mississippi, while on a normal run from New Orleans, Louisiana. While attempting to reboard the

train during switching operations, Murray Loy, an employee of the plaintiff and road foreman for this particular train, was struck by a protruding piece of metal on one of the cars, was thrown to the ground under the wheels of the train, and suffered serious and permanent injuries.

Inspection of the car showed a defect consisting of a torn and bent portion of a side rail which extended out from the side of the car near the grab iron which Loy was attempting to grab to enable him to mount the car. The particular car in question, a piggyback or trailer car numbered TTX 600118, had suffered damage to the side sill in a derailment on November 28, 1968, while in the possession of the defendant. Northwestern had partially repaired the defect by cutting away a portion of the side sill, leaving a stub which was later found to be bent down, causing the protruding safety defect. Northwestern returned the car to service on December 5, 1968. The car was in and out of the custody of Northwestern, being interchanged with several other railroads, until January 30, 1969, when Northwestern last had custody of it. The car was used by several other railroads until March 8, 1969, when it came into the custody of AGS.

Northwestern, AGS, and every other principal railroad in the United States are members of the Association of American Railroads (AAR), and subscribe to the AAR Code of Interchange Rules. This code requires that a thorough inspection be made on each interchange of cars between railroads to determine if the equipment is safe for operation and that no defects in safety appliances exist. The facts show that AGS had the New Orleans Terminal, another constituent part of the Southern Railroad System, conduct its interchange inspections on trains out of New Orleans. On March 8, 1969, the New Orleans Terminal, AGS's agent in this regard, had inspected this train and either had not discovered the defect in question or had not considered it to be sufficiently danger-

ous to warrant removing the car from service.

Loy brought an action for $500,000 against the AGS and the Southern Railway System under the provisions of the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq. (FELA). AGS made demand on Northwestern to assume responsibility for the accident and to defend the action. After Northwestern's refusal, AGS settled Loy's claim for $100,000, and demanded that Northwestern reimburse AGS for the settlement plus its expenses. On Northwestern's refusal, AGS brought the instant action.

## PROCEEDINGS BELOW

At trial, AGS claimed that it was entitled to indemnity from Northwestern in the amount which it paid to Loy in settlement of his claim plus its expenses in the matter. Its claim for indemnity was based on charges that the defective condition of the car was caused by the active negligence of Northwestern which had created the hazardous condition and permitted the railroad car to be placed in active railroad service in such damaged and defective condition, thereby exposing AGS to liability to its employee for his injuries under FELA, caused by its passive negligence in failing to have discovered such defective condition. Its theory of recovery was based on the principle of law codified in § 95 of the Restatement of Restitution (1937). That section reads as follows:

> Where a person has become liable with another for harm caused to a third person because of his negligent failure to make safe a dangerous condition of land or chattels, which was created by the misconduct of the other or which, as between the two, it was the other's duty to make safe, he is entitled to restitution from the other for expenditures properly made in the discharge of such liability, unless after discovery of the danger, he acquiesced in the continuation of the condition.

The principle embodied in this section allows one joint tortfeasor to recover indemnity against another if the claimant

was guilty only of passive negligence such as a negligent failure to discover a dangerous condition created by the active negligence of the other joint tortfeasor.

 It is now settled that a railroad's right to recover indemnity or contribution from a third party for liability incurred under FELA depends entirely on state law. *See, e. g.,* Grunenthal v. Long Island R.R. Co., 388 F.2d 480, 482 (2d Cir. 1968); Ratigan v. New York Cent. R.R. Co., 291 F.2d 548, 553 (2d Cir.), cert. denied, New York Cent. R.R. Co. v. Interstate Commodities, Inc., 368 U.S. 891, 82 S.Ct. 144, 7 L.Ed.2d 89 (1961); Chicago, Rock Island & Pac. R.R. Co. v. Chicago & Northwestern Ry. Co., 280 F.2d 110, 114 (8th Cir. 1960), cert. denied, 364 U.S. 931, 81 S.Ct. 378, 5 L.Ed.2d 364 (1961); Chicago Great W. Ry. Co. v. Casura, 234 F.2d 441, 449 (8th Cir. 1956); Waylander-Peterson Co. v. Great N. Ry. Co., 201 F.2d 408 (8th Cir. 1953); Brenham v. Southern Pac. Co., 328 F.Supp. 119, 123 (W.D.La. 1971); Annotation, Right of Railroad, Charged with Liability for Injury to or Death of Employee under Federal Employers' Liability Act, to Claim Indemnity or Contribution From Other Tortfeasor, 19 A.L.R.3d 928, 931 (1968). The principle of law found in § 95 of the Restatement of Restitution (1937) has been recognized in Mississippi, the state whose law would apply because it was the situs of the accident. Home Ins. Co. v. Atlas Tank Mfg. Co., 230 So.2d 549 (Miss.1970); Bush v. City of Laurel, 215 So.2d 256 (Miss.1968). *See* McPhee v. Oliver Tyrone Corp., 353 F.Supp. 601, 605–606 (N.D.Miss.1972).

Many facts germane to plaintiff's theory were in dispute. Most relevant were whether Northwestern actually caused the defective condition or so weakened the side sill by improper and incomplete repair such that later damage resulted, and whether AGS knew by inspection or should have known of the defective condition such that it acquiesced in the continuation of the condition. Evidence was received from both parties as to these and other facts. AGS filed a motion for a directed verdict at the close of all the evidence, which was overruled. Counsel for plaintiff objected to one of the proposed jury instructions, which objection was overruled, and then submitted a supplemental instruction, which was given by the court. After the jury was duly charged with these instructions, a verdict was returned for the defendant and judgment entered accordingly. Plaintiff thereafter filed a motion for judgment n. o. v. in accordance with its motion for a directed verdict, or, in the alternative, for a new trial. After oral argument on these motions, Judge Wangelin denied the same in an order filed August 3, 1973.

## DIRECTED VERDICT

 AGS appeals from the order of August 3, 1973, denying the motion for judgment n. o. v., which motion claimed the evidence in the case established defendant's liability as a matter of law. In reviewing questions relating to the sufficiency of the evidence, both the federal courts and the courts of Mississippi follow the "substantial evidence" test, which requires appellate courts to take that view of the evidence which tends to support the jury's verdict and to give the party having the verdict the benefit of every favorable inference reasonably justified by the evidence. Duncan v. St. Louis-San Francisco Ry. Co., 480 F.2d 79, 83 (8th Cir. 1973); Meyer v. Bankers Dispatch Corp., 471 F.2d 1290, 1292 (8th Cir. 1973); Marshall v. Humble Oil & Ref. Co., 459 F.2d 355, 359 (8th Cir. 1972). *Accord,* Hubbard v. Morris, 275 So.2d 858, 860 (Miss.1973); Ramage v. Kelly, 253 Miss. 582, 176 So.2d 324, 325 (1965).

 As mentioned previously, Mississippi recognizes the principle of law that one who is liable because of his passive negligence in failing to discover a defect may recover indemnity from one who created the dangerous condition, thereby being actively negligent. *See* Home Ins. Co. v. Atlas Tank Mfg. Co., 230 So.2d 549 (Miss.1970); Bush

v. City of Laurel, 215 So.2d 256 (Miss. 1968). However, where the injury resulted from the concurring negligence of two parties, such that both were guilty of equal degrees of negligence, no right of contribution or indemnity will lie. *Id.*

■■ In the instant case, the jury was presented with conflicting evidence as to the degree of negligence of the parties. Viewing the evidence in the light most favorable to Northwestern, for whom the verdict was returned and judgment was entered, there was substantial evidence upon which the jury could find that the negligence of AGS constituted active negligence so as to bar its claim for indemnity from Northwestern under the law of Mississippi. In such a situation, it was not error for the trial judge to deny AGS's motion for a directed verdict or judgment n. o. v., for a verdict is properly directed or a judgment n. o. v. granted only when the evidence is such that there can be but one reasonable conclusion as to the verdict. Meitz v. Garrison, 413 F.2d 895, 896 (8th Cir. 1969); Compton v. United States, 377 F.2d 408, 411–412 (8th Cir. 1967). *See* American Fire & Cas. Co. v. Stewart-Sneed-Hewes, Inc., 478 F.2d 227 (5th Cir. 1973); Trawick v. Manhatten Life Ins. Co., 447 F.2d 1293 (5th Cir. 1971).

## JURY INSTRUCTIONS

■ On appeal, AGS alleges that four separate portions of the instructions submitted to the jury constituted error so as to require a reversal of the judgment and the granting of a new trial. A review of the record clearly shows that as to three of these allegations of error, timely and specific objections were not made before the jury retired. Rule 51 of the Federal Rules of Civil Procedure reads in part as follows:

No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.

A failure to object to a jury charge in a timely and specific manner results in a waiver of such objections on appeal. *Id.*; Klapmeier v. Telecheck International, Inc., 482 F.2d 247, 255 (8th Cir. 1973); Fulton v. Rock Island & Pac. R.R. Co., 481 F.2d 326, 338–339 (8th Cir. 1973); Cone v. Beneficial Std. Life Ins. Co., 388 F.2d 456, 460 (8th Cir. 1968). AGS has waived its exceptions to the jury instructions which were not the subject of timely and specific objections at trial.

Objection was made by AGS to that part of the charge defining "active negligence," which read as follows:

Such negligence is "active negligence" if it is conduct by omission or commission which occurs or participates in some way to bring about injury.

AGS advocates on appeal that this instruction was erroneous on the grounds that such definition caused the jury to erroneously believe that mere passive negligence on the part of the plaintiff which would contribute or concur to cause the injury of Murray Loy would defeat the plaintiff's right of indemnity. AGS claims this instruction was contrary to the law of indemnity and therefore constituted reversible error.

■ On reviewing a trial court's instructions to the jury, to determine whether or not they correctly set forth the applicable law, this court is bound to read and consider the charge as a whole. Bennett v. First Nat'l Bank, 443 F.2d 518, 521 (8th Cir. 1971); Jiffy Markets, Inc. v. Vogel, 340 F.2d 495, 500 (8th Cir. 1965). *See* Fulton v. Chicago, Rock Island & Pac. R.R. Co., 481 F.2d 326, 339 (8th Cir. 1973). After his objection to the above instruction was overruled, counsel for AGS submitted a supplemental instruction on the definition of "active negligence," which was given to the jury immediately subsequent to the above definition. This supplemental instruction read as follows:

Negligence is active if it creates a danger which results in injury.

Negligence is passive if it merely permits the danger to exist.

Thus, this instruction as well as the one above must be considered to determine if the jury was correctly charged with the applicable law or to ascertain if they were confused or misled.

■ The law of Mississippi must be closely analyzed to determine the nature and extent of the law of indemnity and whether these instructions operated to emasculate any right of AGS to indemnity under that law. Mississippi follows the general rule that joint tortfeasors in *pari delicto*, where each are guilty of acts or omissions which could have proximately caused the underlying injury, are not entitled to indemnity from each other. Home Ins. Co. v. Atlas Tank Mfg. Co., 230 So.2d 549, 551 (Miss.1970); Bush v. City of Laurel, 215 So.2d 256, 260 (Miss.1968). *See* Smith Petroleum Serv., Inc. v. Monsanto Chem. Co., 420 F.2d 1103, 1111 (5th Cir. 1970); McPhee v. Oliver Tyrone Corp., 353 F.Supp. 601, 605 (N.D.Miss.1972). However, Mississippi does recognize a right to indemnity when the parties are not in *pari delicto*, as when one party does an act or creates a dangerous condition, exposing the other to liability for his passive negligence in failing to discover such condition.

> The rule is clearly set out in St. Louis & San Francisco Railway v. United States, 187 F.2d 925 (5th Cir. 1951): "[I]n Mississippi, as generally elsewhere, a right of indemnity * * * arises in favor of one not actively at fault against an active wrongdoer." 187 F.2d at 927. *Bush, supra*, 215 So. 2d at 260.

The Mississippi court later succinctly set out the general rule governing implied indemnity for tort liability in *Home Insurance, supra.*

> The general rule governing implied indemnity for tort liability is that a joint tort feasor, whose liability is secondary as opposed to primary, or is based upon imputed or passive negligence, as opposed to active negligence, or is negative negligence as opposed to positive negligence, may be entitled, upon an equitable consideration, to shift his responsibility to another joint tort feasor. However, where the fault of each is equal in grade and similar in charter, the doctrine of implied indemnity is not available since no one should be permitted to base a cause of action on his own wrong. Thus, the determination of whether or not indemnity should be allowed must of necessity depend upon the facts of each case. * * * Two critical prerequisites are generally necessary for the invocation of non-contractual implied indemnity in Mississippi: (1) The damages which the claimant seeks to shift are imposed upon him as a result of some legal obligation to the injured person; and (2) it must appear that the claimant did not actively or affirmatively participate in the wrong. 230 So.2d at 551 (citations omitted).

The first of these two prerequisites was established in this case. The damages which AGS paid to Murray Loy and which it seeks to shift to Northwestern were imposed as a result of its legal obligation to Loy under the provisions of FELA. AGS's right to recover indemnity under Mississippi law therefore was based on the determination of whether it actively or affirmatively participated in the wrong bringing about Loy's injury. *See McPhee, supra*, 353 F.Supp. at 606. It was the province of the jury as the factfinder to determine such question. *See Home Insurance, supra*, 230 So.2d at 551.

Two theories were submitted to the jury which would have allowed them to find AGS's negligence to be active, thereby barring indemnity. The first of these theories allowed the jury to find active negligence on the part of AGS if they found that AGS had inspected the railroad car, had discovered the dangerous condition which was likely to cause injury to its employees, and had failed to remedy this dangerous condition or warn its employees of its existence, thereby acquiescing in the use of the car

in that condition. The second theory allowed the jury to find active negligence on the part of AGS if they found that AGS had inspected the railroad car but had failed to discover the damaged condition which was open and obvious and which was a dangerous condition which was likely to cause injury to its employees. Under both theories, the jury was required to find that the active negligence of AGS "directly caused or directly contributed to cause" the injuries of Murray Loy in order to bar indemnity.

The complained of instruction was objected to on the ground that it allowed the jury to find that mere passive negligence, such as its failure to discover the dangerous condition, which concurred or participated "in some way" to bring about the injury, was active negligence so as to bar its claim for indemnity. AGS claims this was not a correct statement of the law.

■■■ Taken in context, and considering the charge as a whole, we think the instruction was not reversible error. While we do not consider these instructions to be the epitome of clarity or preciseness, they properly announced the applicable law. If the jury found that AGS had discovered the dangerous condition, its failure to remedy the defect or warn its employees of its existence could be considered to be active negligence under the law of indemnity. See Kennedy v. Pennsylvania R. R. Co., 282 F.2d 705, 710 (3d Cir. 1960). Under the general law of indemnity, active negligence may also be based on a failure to discover an open and obvious condition if there was a duty to inspect. AGS had a duty to inspect its trains for safety defects under the provisions of the AAR Code of Interchange Rules and under the provisions of FELA. See Shenker v. Baltimore & Ohio R. R. Co., 374 U.S. 1, 8–10, 83 S.Ct. 1667, 10 L.Ed. 2d 709 (1963). A failure to properly inspect such that it failed to discover a dangerous condition which was open and obvious and which was likely to cause injury to AGS's employees could be consid-

ered to be an act of active negligence under the law and the facts of this case. Although no Mississippi cases on point are to be found, a failure to properly inspect railroad cars for safety defects was held to bar an action for indemnity in Chicago, Rock Island & Pac. R. R. Co. v. Chicago & Northwestern Ry. Co., 280 F.2d 110 (8th Cir. 1960), cert. denied, 364 U.S. 931, 81 S.Ct. 378, 5 L.Ed. 2d 364 (1961). This court there held that under the law of indemnity as applied in Iowa such a failure to properly inspect after the railroad car had come into the control of the plaintiff was negligence of a degree at least equal to the defendant's negligence in breaching its duty to deliver its cars in a reasonably safe condition. See id. at 117. The court reasoned that the proximate cause of the injury was the defective car itself, with the negligence of both railroads contributing thereto. This court distinguished earlier cases in the circuit where the complaining railroad had no control over the object causing injury such that it had the duty to inspect and make it safe. Id. at 118. Compare Chicago Great W. Ry. Co. v. Casura, 234 F.2d 441 (8th Cir. 1956); Waylander-Peterson Co. v. Great N. Ry. Co., 201 F.2d 408 (8th Cir. 1953).

An analogous case in Mississippi dealt with a failure of an affirmative duty to inspect. In Home Insurance, supra, an electric company was held to be actively negligent for failing to discover by inspection that its electric lines had become dangerously lower than required in safety regulations, and for failing to remedy the defect after knowledge of the dangerous circumstances was made known to it or "by the exercise of the highest degree of care required should have been known by [it]." 230 So.2d at 552. The dangerous condition had been caused by the active negligence of the defendant, who had filled in the land below the lines with dirt, creating the dangerously low clearance. Defendant's employee was later electrocuted when the crane which he was operating came into contact with the lowered lines. Al-

though the chancellor (factfinder) in that case found that the electric company was charged with knowledge of the danger, the evidence was disputed that it had actual knowledge, and the Mississippi Supreme Court affirmed the finding of active negligence on the basis of *either* actual or constructive knowledge of the danger. *Id.* at 554. The reason for this holding was because "manifestly the duty required of the company in respect to the maintenance of its electric wires is an active duty. * * * To hold otherwise would be either to deny the duty of inspection, or else to say that the periods thereof could be so far apart as to be of little practical value." *Id.*, quoting Mississippi Power Co. v. Thomas, 162 Miss. 734, 739, 140 So. 227, 228 (1932). Because both parties were guilty of active negligence, the electric company was denied indemnity. The Mississippi court thus adopted a rule that indemnity will be denied when the claimant has failed in an affirmative duty to inspect, thereby being actively negligent. In the instant case, the jury could have found that AGS's failure to discover the defective condition, which was open and obvious and likely to cause injury to its employees, when it had an affirmative duty to inspect under the AAR Code of Interchange Rules and the provisions of FELA, was active negligence of a degree equal to Northwestern's negligence in delivering the car in an unsafe condition, such that it directly contributed to Loy's injury.

 The specific instruction to which AGS objected did not venture from the law. Although no Mississippi cases defining active and passive negligence in these terms are to be found, the law of indemnity as applied in other jurisdictions establishes that active negligence may be an act of omission as well as an act of commission when one is under an affirmative duty to act. *See* Ingham v. Eastern Air Lines, Inc., 373 F.2d 227, 240 (2d Cir. 1967); Schipper v. Lockheed Aircraft Corp., 278 F.Supp. 743, 745 (S.D.N.Y.1968); Degen v. Bayman, 86 S.D. 598, 200 N.W.2d 134, 137 (1972). As mentioned previously, an omission of an affirmative duty to inspect was held to be active negligence in *Home Insurance, supra.* The "in some way" part of the definition did not add to the scope of active negligence in light of the requirement that the jury had to find that any active negligence of AGS directly caused or directly contributed to cause Murray Loy's injuries.

In any event, immediately subsequent to this instruction, the trial court gave the additional instruction requested by AGS's counsel. Such instruction clearly limited for the jury the scope of active negligence. This instruction required the jury to find AGS's negligence to be passive if it "merely permit[ted] the danger to exist." It did not require the jury to find AGS's negligence to be passive if the jury believed AGS had an affirmative duty to properly inspect and failed in this duty; such negligence could be found to be active under these instructions and under the law of indemnity. Thus, the two instructions defining active negligence were not so inconsistent so as to require reversal and remand for a new trial.

The judgment and order denying the motions for a judgment n. o. v. or a new trial are affirmed.