MISSISSIPPI POWER CO. *v.* THOMAS.

(Division B. March 14, 1932.)

[140 So. 227. No. 29870.]

Baskin, Wilbourn & Miller, of Meridian, for appellant.

736

L. P. Spinks and John A. Clark, both of De Kalb, for appellee.

**Griffith, J.,** delivered the opinion of the court.

Under a franchise granted by the town of De Kalb, appellant owns and operates an electric lighting system in said town. One of the service wires of appellant company extended across a street, which street was a part of a public highway known as the De Kalb and Summerville public road. This wire had originally been placed at a height above the street of fifteen feet. But, about two weeks before the injury hereinafter mentioned, some wagons loaded with camphouses had passed along this street, and the stove flues of these camphouses were of

such height that they came in contact with said service wire and pulled it out of place, so that it sagged at a lower position above the street. This service wire entered the residence of a customer of appellant company. The wife of said customer, after the displacement of the wire by the camphouses, undertook to raise the wire by means of a stick at her garden fence, and did raise it, as she thought, sufficiently high to allow vehicles to pass safely under it on the street.

On March 10, 1931, appellee was assisting in hauling a load of lumber, and was traveling along this street. He was riding on top of the lumber, and, as the truck so loaded and upon which he was riding passed under this wire, appellee's head came in contact with said wire, and appellee was injured, for which injury he sued and recovered judgment.

The condition upon which a public utility company may string its wires over and across streets and highways is that these wires must be so placed as not to be dangerous to persons and property. Section 1506, Code 1930. And there is no question but that it is the continuing duty of the company to maintain its wires over the streets and highways in such manner as not to be or become dangerous to persons and property. And, while this duty is not absolute in the sense that the company is an insurer against all injuries and in all events, it is true that the rule, because it concerns the dangerous agency of electricity, is not satisfied so as to relieve of liability unless and until it is shown that the company has exercised the highest degree of care to prevent the danger. Potera v. Brookhaven, 95 Miss. 774, 782, 49 So. 617. See, also. Williams v. Canton, 138 Miss. 661, 103 So. 811; Cumberland Telephone & Telegraph Co. v. Cosnahan, 105 Miss. 615, 62 So. 824; Temple v. Light & Power Co., 89 Miss. 1, 42 So. 874, 11 L. R. A. (N. S.) 449, 119 Am. St. Rep. 698, 10 Ann. Cas. 924.

And manifestly the duty required of the company in respect to the maintenance of its electric wires is an active duty—not merely a passive obligation to act only when some third person has gone to the trouble to volunteer information to the company of a particular danger at a particular place. Thus it follows that there is a duty on these electric companies to make inspections of their wires and equipment. We do not hold that this obligation requires a constant inspection, nor do we attempt to say how often such an inspection shall be made. This is a question that is to be solved by application of the above-stated rule of care to all the facts and circumstances of the case, and ordinarily it will be a matter for the jury. 1 Joyce Electric Law, section 438 b; 20 C. J. 359.

But in the case at bar the evidence discloses without serious dispute that the offending wire had been in a dangerously low position for a period of at least one week, and this over a frequently traveled public highway within the corporate limits of the town. Much of the evidence is to the effect that the dangerous condition had existed for ten days or two weeks. Taking, however, the shorter period of time first mentioned, that is to say, one week, we do not hesitate to say that, as a matter of law, this was a period of time sufficient to charge the company with constructive knowledge. To hold otherwise would be either to deny the duty of inspection, or else to say that the periods thereof could be so far apart as to be of little practical value.

It is argued by appellant company, however, that, although it is true that the testimony shows that the camphouses had displaced the wire and had caused it to be lower than was its original position, and although it may be true that this displacement may have been for as long as one week, yet it is not shown exactly what the height was after the interference by the camphouses, and it is not shown that the wire was low enough to come into

contact with travelers on the highway until the actual happening of the injury in this case. In other words, the argument of appellant is that appellee has not made proof in respect to the particular issue just mentioned and that the burden thereof was on appellee. In Potera v. Brookhaven, supra, it was held that the fact that a live wire was down in the street, so as to injure a person coming in contact therewith, was prima-facie evidence of negligence on the part of the company, thereby shifting the burden of proof to the company. See, also, Williams v. Canton, supra; 2 Joyce Electric Law, section 1048. Under the operation of this rule, and in the absence of testimony on the point last mentioned, it must be assumed, under the facts that are before us, that the wire remained in the condition left as a result of the passage of the camphouses, and that the position of the wire was low enough during the entire intervening period to catch a person riding on top of a load of lumber. The burden of proof had been shifted to appellant in this particular, and was no longer on appellee. Therefore the court was not in error in granting a peremptory instruction in behalf of appellee on the issue of liability.

The verdict appears to us to be extravagantly large. Nevertheless, there is evidence in support of the amount allowed and of sufficient strength to foreclose the conclusion that the amount is manifestly or undoubtedly unreasonable. Appellee in his own testimony as a witness admitted contributory negligence. If appellant had requested an instruction calling attention to that feature, and directing the jury to diminish the damage in proportion to the contributory negligence, we would have been enabled to reduce the judgment. But appellant did not take that essential step, Alabama & V. R. Co. v. McGee, 117 Miss. 370, 384, 78 So. 296, and consequently we are not authorized to interfere.

Affirmed