341 So.2d 665 (1977)
HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY and W.C. Mason
v.
Vernon Lewis COOPER.
No. 48996.
Supreme Court of Mississippi.
January 26, 1977.
Shell, Buford, Bufkin, Callicutt & Perry, Cary E. Bufkin, Henley, Lotterhos & Bennett, Charles B. Henley, Jackson, for appellant.
Ross & Ross, Fred A. Ross, Jr., Wise Carter Child Steen & Caraway, Natie P. Caraway, Jackson, for appellee.
Before GILLESPIE, C.J., and SUGG and BROOM, JJ.
GILLESPIE, Chief Justice, for the Court.
In a personal injury suit tried in the Circuit Court of Copiah County, judgment for $250,000 was awarded to Vernon Lewis Cooper (plaintiff) against Hartford Steam Boiler Inspection & Insurance Company (Hartford) and Hartford's employee, W.C. Mason.
Sanderson Farms, Inc., (Sanderson) operates a chicken processing plant at Hazlehurst, using a considerable amount of equipment, including machinery for making *666 ice. Hartford insured Sanderson against costs of repairs of equipment and shutdown losses from breakdowns of machinery, subject to a $1,000 deductible for each loss. The policy provided that Hartford had the right (but was not required) to make inspections of the insured equipment and could under certain circumstances suspend insurance coverage.
On October 27, 1972, the manifold on a Frick 9 X 9 compressor ruptured, releasing a large amount of ammonia at a time when plaintiff was near the machine. Plaintiff sustained grave injuries. He received workmen's compensation benefits from his employer's workmen's compensation carrier and then filed this third party action.
Cooper's suit against Hartford and Mason is grounded on the theory that Hartford, through Mason, exercised its right of inspection of Sanderson's equipment to such an extent that Mason directed, controlled, and supervised the maintenance of Sanderson's equipment, and from 1970 through 1972, inspections by Mason were of such extent and frequency that Sanderson and its employees relied on the inspections made by Mason. Plaintiff further contends that Mason negligently failed to inspect the compressor which ruptured and injured plaintiff.
Inspections were usually made by Mason of the internal parts of machinery only when a machine was torn down for repairs. Mason lived in Jackson and Sanderson contacted him each time a machine needed repair and usually the machine would be dismantled when Mason arrived to make his inspection. Mason examined the worn and broken parts and made specific recommendations as to replacements of broken parts or worn parts. Mason made no repairs but reported his inspections to Hartford with a statement of the condition of the machinery, his recommendations, and whatever the circumstances required. Sanderson employed a maintenance superintendent and six mechanics to maintain its equipment. These mechanics operated under Freddie Stegall, the superintendent, and the other mechanics, including plaintiff, worked in three shifts on a twenty-four-hour schedule in the maintenance of Sanderson's equipment. Stegall kept a file on each machine with a record of all work performed.
The recommendations Mason made following inspection of a machine would be followed by Sanderson's maintenance employees. As occasion required and from time to time, Sanderson would have work done on the machinery by Munford Engineering Company, Inc. When Munford Engineering Company would work on the machines, Sanderson's employees usually called Mason to inspect the work. Munford Engineering Company, Inc., is a commercial refrigeration engineering firm located in Jackson.
The policy did not require of Hartford any duty to make safety inspections, although Mason on one or more occasions called to the attention of Sanderson's employees conditions which he deemed to be unsafe.
In June, 1972, the Frick 9 X 9 compressor in question was completely overhauled, and during the overhauling of this machine, Mason was present at the plant on four occasions, at which time he inspected the machine and made his recommendations. After completion of the overhauling, the compressor worked satisfactorily until the ice making system, of which the compressor was a part, began encountering difficulties in late September, 1972. Sanderson's maintenance supervisor decided that the valves of the Frick 9 X 9 compressor should be checked. This involved removing the head of the compressor. Stegall directed Sanderson's maintenance employees to go into the machine, but Mason was out of town and could not be reached. On September 28, Don Higdon, a skilled maintenance employee, and another of Sanderson's maintenance employees dismantled the machine and checked the valves but found no malfunction. The compressor was put back together and it worked satisfactorily until October 27, when it ruptured and injured plaintiff.
On October 19, 1972, Mason was at Sanderson's plant for the purpose of making an inspection of a boiler and while in the engine *667 room where the Frick 9 X 9 compressor was located, Mason was informed by Stegall of the fact that approximately three weeks earlier, the Frick 9 X 9 compressor had been dismantled and Mason had been called but could not be reached. Stegall then told Mason what had been done to the compressor and Mason replied that they had correctly handled the matter. It is plaintiff's contention that it was Mason's duty on October 19, 1972, to dismantle the compressor and inspect it, although he had been told what had been done to the machine and the machine was performing satisfactorily.
The evidence of appellee's expert witness and the other proof was sufficient to justify finding that the set screws were not locked properly when Sanderson's employees went into the machine on September 28, and that this precipitated the accident injuring plaintiff. The proof also showed that if the machine had been dismantled and inspected by Mason on October 19, that the loose set screws would have been discovered.
The trial court denied a peremptory instruction requested by Hartford and Mason. Our decision turns on whether the court erred in submitting the case to the jury. This involves several questions later stated and discussed.
Plaintiff's theory of liability is grounded on Restatement (Second) of Torts section 324A (1965),[1] which is as follows:
One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
(a) his failure to exercise reasonable care increased the risk of such harm, or
(b) he has undertaken to perform a duty owed by the other to the third person, or
(c) the harm is suffered because of reliance of the other person or the third person upon the undertaking.
To bring this case within the Restatement rule, section 324A, plaintiff must show (1) that Hartford and Mason owed a duty[2] to make the inspections, and (2) reliance by Sanderson on Hartford and Mason to make inspections, thus inducing Sanderson to forego making inspections.

Did Hartford and Mason owe a duty to inspect?
If Hartford and Mason had a duty to inspect, the obligation must derive either from the policy or because Hartford and Mason assumed responsibility for performing inspections to the extent that they should have recognized the inspection of the machines was necessary for the protection of third persons.
The provision of the policy giving Hartford the right to inspect is permissive. There is no obligation to make inspections and the proof shows that such inspections as Mason made were for the purpose of reducing the risk of loss that Hartford might have under the policy. The incidental benefits that accrued to Sanderson's employees and the public by Mason's inspections and recommendations should not rationally give rise to liability for failure to inspect a particular piece of equipment. See Zamecki v. Hartford Accident & Ind. Co., 202 Md. 54, 95 A.2d 302 (1953).
In our opinion, there was no reason why Hartford and Mason should have recognized that Sanderson's employees or third persons were dependent upon Mason's inspections or that inspections by Mason were necessary for their protection. Mason made inspections only for the purpose of reducing risk of loss under Hartford's policy.
We hold that Hartford and Mason had no duty to make inspections generally or to inspect the machine in question. If Hartford and Mason had been under a duty to *668 make inspections, why should the failure to inspect the Frick 9 X 9 compressor be considered a breach of duty? The machine was operating satisfactorily on October 19, and had been since Sanderson's mechanics had gone into it on September 28. Indeed, it had performed properly since the June repairs. In our opinion there was no reason for anyone to inspect the machine in question when Mason was in the plant on October 19.

Was there reliance by Sanderson on inspections made by Mason to the extent that Sanderson was induced to forego its own inspections?
Stegall testified that he relied on Mason's inspections of the machines. The reliance by Stegall on Mason consisted of complying with Mason's recommendations when the latter was called in because of trouble with a particular machine. This was because "I relied upon him. He was the insurance man and he had been in the business for years. I figured it was for the company's [Sanderson's] benefit to follow his directions."
We find no basis in the evidence for a finding that Sanderson was induced by Mason's undertaking to forego taking precautions against harm to its employees or third persons for the following reasons: (1) Mason did not undertake to make safety inspections or general system-wide maintenance inspections; (2) the insurance policy did not require or contemplate that Hartford or its agent would be obligated to oversee the maintenance and safety of Sanderson's equipment; (3) Sanderson employed an experienced refrigeration mechanic as superintendent and six other mechanics who continuously engaged in maintaining the equipment on a twenty-four-hour basis; (4) the inspections Mason made for Hartford were for the purpose of reducing Hartford's losses; (5) there is no proof that Hartford undertook the duty of discovering unsafe conditions in Sanderson's plant, the recommendations Mason made falling far short of a system-wide assumption of Sanderson's duty to provide his employees with reasonably safe appliances; (6) Mason's visits to the plant were sporadic, usually when there was trouble with a specific machine; and (7) the fact that when it was suspected that the machine in question might not be functioning properly, Sanderson's mechanics undertook to go into it, inspect, and reassemble it in Mason's absence.
The opinion in Stacy v. Aetna Casualty & Surety Co., 484 F.2d 289 (5th Cir.1973), contains a good analysis of the question of reliance and the application of section 324A to the factual situation there involved. Accord Tillman v. Travelers Indemnity Company, 506 F.2d 917 (5th Cir.1975).
Applying section 324A in the light most favorable to plaintiff, there is no evidence to satisfy either of the conditions plaintiff must meet to establish liability. The trial court erred in refusing Hartford's and Mason's requested peremptory charge.
We do not reach other questions, including the claim of immunity, raised by Hartford and Mason.
REVERSED AND JUDGMENT HERE FOR APPELLANTS.
PATTERSON and INZER, P. JJ., and SMITH, ROBERTSON, SUGG, WALKER, BROOM and LEE, JJ., concur.
NOTES
[1] The facts do not bring the present case within Rule 324A and we do not decide whether or not the rule should be adopted in whole or in part.
[2] Either under the policy or by having gratuitously or otherwise assumed it.