847 So.2d 270 (2003)
T & S EXPRESS, INC., Appellant,
v.
LIBERTY MUTUAL INSURANCE COMPANY, Appellee.
No. 2001-CA-00223-COA.
Court of Appeals of Mississippi.
March 25, 2003.
Rehearing Denied June 3, 2003.
Sam Starnes Thomas, Jackson, for appellant.
*271 R. Brittain Virden, Greenville, for appellee.
Before McMILLIN, C.J., THOMAS and CHANDLER, JJ.
THOMAS, J., for the court.
¶ 1. T & S Express was found to be the real party in interest and was ordered to pay Liberty Mutual full indemnity of $298,000. Aggrieved T & S asserts the following on appeal.

I. THE TRIAL COURT ERRED IN FAILING TO GRANT THE DIRECTED VERDICT MOTION, PEREMPTORY INSTRUCTION AND MOTION FOR JUDGEMENT NOTWITHSTANDING THE VERDICT.

II. A NEW TRIAL IS IN ORDER AS THE TRIAL COURT ERRED IN GRANTING TWO JURY INSTRUCTIONS OFFERED BY LIBERTY AND REFUSING NUMEROUS JURY INSTRUCTIONS OFFERED BY T & S.
We reverse and render.

FACTS
¶ 2. Liberty Mutual Insurance Company sought indemnity against T & S Express, Inc., hereafter referred to as T & S, for a personal injury claim which Liberty paid on behalf of Norton Ramsey Motor Lines, Inc., its insured. Norton was sued as the employer of Thomas Teague under respondeat superior. It is undisputed that at the time of the accident, while Teague was driving a truck with Norton placards, he was actually employed by T & S. Teague's truck collided with a vehicle driven by the Myerses. The Myerses sued Norton and, as Norton's insurer, Liberty represented Norton against the claim. Liberty's motion for summary judgment was denied, and subsequently rather than taking the claim to trial, Liberty decided to settle the case by paying the Myerses $298,000, reserving indemnification rights therein.
¶ 3. The Myerses attempted to file suit against T & S directly but were barred by the statute of limitations. Norton filed a third party complaint denying any liability to the Myerses and asserting a right to indemnification from T & S for any damages imposed on Norton in favor of the Myerses. T & S sought but was denied summary judgment on the indemnity claim. A jury found against T & S on the indemnity claim and awarded Liberty full indemnification.

I. THE TRIAL COURT ERRED IN FAILING TO GRANT THE DIRECTED VERDICT MOTION, PEREMPTORY INSTRUCTION AND MOTION FOR JUDGEMENT NOTWITHSTANDING THE VERDICT.
¶ 4. This Court's standard of review for the denial of a judgment notwithstanding the verdict, peremptory instructions, and directed verdict is as follows:
[T]his Court will consider the evidence in the light most favorable to the appellee, giving that party the benefit of all favorable inference that may be reasonably drawn from the evidence. If the facts so considered point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a contrary verdict, we are required to reverse and render. On the other hand if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required. The above standards of review, however, are predicated on the fact that the trial judge applied the correct law. *272 Steele v. Inn of Vicksburg, Inc., 697 So.2d 373, 376 (Miss.1997).
¶ 5. The comment to M.R.C.P. 50, which provides for motions for a directed verdict and for judgment notwithstanding the verdict, states that "Rule 50 is a device for the court to enforce the rules of law by taking away from the jury cases in which the facts are sufficiently clear that the law requires a particular result." M.R.C.P. 50 cmt.
¶ 6. The motion for a directed verdict at the conclusion of the plaintiff's case tests the legal sufficiency of the evidence to support the verdict for the plaintiff. M.R.C.P.50(a). Upon denial of the motion for a directed verdict at the close of all evidence, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Once a verdict is returned, the court may direct the entry of judgment as if the requested directed verdict had been granted. M.R.C.P. 50(b). Whether the court should have granted the motion here depends upon whether the evidence is insufficient as a matter of law to sustain the verdict for Liberty. Patton-Tully Transp. Co. v. Douglas 761 So.2d 835, 843(¶36) (Miss.2000).
¶ 7. In this State, the origins of indemnity are as follows:
An obligation to indemnify may arise from a contractual relation, from an implied contractual relation, or out of liability imposed by law. When one person is required to pay money which another person in all fairness should pay, then the former may recover indemnity from the latter in the amount which he paid, provided the person making the payment has not conducted himself in a wrongful manner so as to bar his recovery.
Bush v. City of Laurel, 215 So.2d 256, 259 (Miss.1968) (citing 42 C.J.S. §§ 20 (1944)); Hartford Cas. Ins. Co. v. Halliburton Co. 826 So.2d 1206, 1216(¶35) (Miss.2001). Two "critical" prerequisites of noncontractual implied indemnity in Mississippi are:
(1) The damages which the claimant seeks to shift are imposed upon him as a result of some legal obligation to the injured person; and
(2) it must appear that the claimant did not actively or affirmatively participate in the wrong.
Home Ins. Co. v. Atlas Tank Mfg. Co., 230 So.2d 549, 551 (Miss.1970) (citing Bush v. City of Laurel, 215 So.2d 256 (Miss.1968); Southwest Miss. Elec. Power Ass'n v. Harragill, 254 Miss. 460, 182 So.2d 220 (1966)). In order for Liberty to prevail on its indemnity claim, it must allege and prove that there was a legal obligation to pay and that it did not actively or affirmatively participate in the wrong. Id.
¶ 8. The central question for determination is whether Liberty paid the Myerses out of a legal obligation or whether the payment was voluntary. There were never any disputed facts in this case. Liberty, under a contractual obligation, defended Norton in the suit and contended that Norton was in no way at fault. Liberty then, upon denial of summary judgment, settled the case with the Myerses for $298,000. Liberty had an obligation to prove, at trial, that it had an obligation to pay the Myerses and that, the obligation arose from the acts of T & S.
¶ 9. The evident problem with Liberty Mutual's claimed right of common law subrogationone that we find insurmountable on the record now before uslies in the fact that Liberty Mutual has never demonstrated in any forum that it was under a legal obligation to pay Myers the sum of $298,000, or any other amount, on behalf of its insured, Norton Ramsey. This legal obligation is, as we have already observed, *273 the first element of a claim of common law subrogation. Myers based his claim against Norton Ramsey on the "placard" theory. Under that theory, the appearance of Norton Ramsey's identifying information on the truck was, of itself, sufficient to make that company liable for any damage caused by the negligent operation of the vehicle, despite the fact that, at the time of the accident, the truck was actually being used to further the business purposes of T & S. Norton Ramsey contended in the suit brought against it by Myers that, under the facts of the case, the "placard" rule had no application and sought summary judgment on that basis. Though the effort to obtain summary judgment was unsuccessful, it goes without saying that the denial of a defendant's summary judgment motion is not the equivalent of a final adjudication of the defendant's liability. Rather than continuing to pursue what Norton Ramsey (and Liberty Mutual, indirectly) apparently believed to be a valid defense to Myers's claim, Liberty Mutual elected, for reasons not appearing in this record, to effect a settlement with Myers. There is no authority, insofar as this Court is aware, holding that the mere compromise of a disputed claim is the equivalent of the payment of a legal obligation within the meaning of the law relating to common law subrogation. Neither does it appear that the issue of whether Liberty Mutual's settlement payment to Myers was in satisfaction of a legal obligation of Norton Ramsey was litigated and adjudicated at the trial level in the action now before us on appeal. In that circumstance, we are constrained to hold that Liberty Mutual has failed, as a matter of law, to establish critical facts necessary to support its claim for subrogation asserted against T & S.
¶ 10. Liberty relies heavily on Bush v. City of Laurel, 215 So.2d 256, 259 (Miss. 1968), to argue its right of indemnity. In Bush, the City of Laurel settled with Bush for $10,000, and sought indemnity from the contractor. The Supreme Court ruled that the city had a non-delegable duty which created an obligation to pay. In the case sub judice no such obligation is present.
¶ 11. The Court recognizes the origins of indemnity as when one person is required to pay money which another person in all fairness should pay, then the former may recover indemnity from the latter. Hartford Cas. Ins. Co. v. Halliburton Co. 826 So.2d 1206, 1216(¶ 35) (Miss.2001). The key element of this theory that is missing in the present case is the requirement to pay; there was not one. Liberty was required to show at trial that it paid the Myerses under an obligation and that the payment was reasonable. The Myerses claim against T & S was time barred and allowing recovery in this way without comporting with the requirements of indemnity law would render the statute of limitations non-effective.
¶ 12. At no time during the trial did Liberty produce any evidence regarding its obligation to pay the Myerses. Liberty had no liability to the Myerses and did not show anything other than an absence of liability. There can be no recovery without proving that a legal obligation existed. These are issues of law based upon facts that are undisputed; therefore, the trial court should have granted a directed verdict in favor of T & S.

II. A NEW TRIAL IS IN ORDER AS THE TRIAL COURT ERRED IN GRANTING TWO JURY INSTRUCTIONS OFFERED BY LIBERTY AND REFUSING NUMEROUS JURY INSTRUCTIONS OFFERED BY T & S.
¶ 13. Review of this issue is not required.
*274 ¶ 14. THE JUDGMENT OF THE CIRCUIT COURT OF LEFLORE COUNTY IS REVERSED AND RENDERED. COSTS ARE TAXED AGAINST THE APPELLEE.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., BRIDGES, LEE, IRVING, MYERS, CHANDLER and GRIFFIS, JJ., CONCUR.