GRIFFIS, J.,
for the Court.
¶ 1. Anthony Paul Williams filed suit against Entergy Mississippi, Inc. (“Enter-gy”), in the Circuit Court of Washington County. After Williams’s ease~in-chief, Entergy moved for a directed verdict. The circuit court granted Entergy’s motion and entered a judgment. On appeal, Williams argues that the circuit court erred by granting Entergy’s motion for a directed verdict and by improperly excluding certain evidence. We find no error and affirm the circuit court’s judgment.
FACTS
¶ 2. Williams testified that on August 20, 2004, he attended a fish fry located on Central Street in Greenville, Mississippi. He said that after sunset he was leaving the fish fry with two of his friends, Calvin Plant and Roderick Hood, when he tripped on a guy wire and severely damaged his ankle. He also testified that the guy wire was the only object he tripped on that night.
¶ 3. Williams’s attorney wanted to introduce evidence of another guy wire, which had a guy marker, in the area that Williams did not trip over. However, the circuit judge excluded this testimony.
¶ 4. Williams also testified that he could not see the guy wire that he tripped over because a streetlight near the guy wire was not working. During cross-examination, Williams admitted that he knew about the guy wire before the day of the accident because he had grown up in that neighborhood. He also admitted that he had walked by the guy wire several times that day to go to the store or to go talk to people in the neighborhood.
¶ 5. Williams admitted that he had been drinking before the accident, but he stated that he was sober when the accident happened. Shirley Slack, the grandmother of one of Williams’s children and the admissions clerk at the hospital emergency room, testified that Williams did not appear intoxicated when he checked into the emergency room on the night of the accident. However, she admitted that the emergency room documentation indicated that Williams had been drinking.
¶ 6. Addie Bradley (“Addie”), who lives on Central Street, testified that she left the fish fry around 6:30 p.m. and returned home. After she heard the noise from the accident, she came outside and saw Williams’s foot under the guy wire. She also testified that the streetlight across the street from the guy wire was not working. Addie claimed that when she called Enter-gy to report the outage, prior to Williams’s fall, that the man on the telephone told her “that he wasn’t going to put a nary another you know what light up there.” This testimony is similar to testimony given by her daughter, Debra Bradley (“Debra”), that when she approached an Entergy workman in the neighborhood, he told her that “he wasn’t going to put a nary damn light up there.” Addie further testified that she called Entergy after the accident about the light, but the light was never fixed.
¶ 7. Debra testified that other people in the neighborhood had tripped over that guy wire even though everyone in the neighborhood knew where it was located. However, she did not offer any names or dates for these accidents. She testified that the streetlight across the street from the guy wire was out at the time of the accident. Debra testified that she had called Entergy about the broken light two or three times before the accident, and she also had told a man repairing lights across the railroad tracks about the outage. Debra did not know the date of her calls and did not know whether anyone had been out to look at the light. She also testified that *760 she did not believe Williams was intoxicated at the time of the accident, even though he had been drinking.
¶ 8. Hood testified that Williams crossed the street from the fish fry in order to talk to him. When Williams was trying to go back across the street, he tripped on the guy wire. He said that Williams did not appear intoxicated at the time of the accident.
¶ 9. Jerry Steed, a serviceman for En-tergy, testified that the City of Greenville leased the streetlights from Entergy. He also testified that he did not get a work order for the streetlight in question until after the accident on August 26, 2004. However, Steed did not know how much time normally passed between when a complaint was received and when a work ticket was generated on his computer. He did not remember anyone complaining about the streetlight prior to the accident.
¶ 10. Troy Little, Williams’s expert witness and an electrical engineer, stated that he is very familiar with the National Electric Safety Code (“NESC”), which regulates the installation of utility poles and guy wires. He testified that guy markers make guy wires more visible. He also testified that “[t]he National Electric Safety Code that applies in this instance is the Sixth Edition ... and it specifically is Rule 282(E).” He said that Rule 282(E) requires that guy wires have guy guards if the guy wires are “exposed to traffic.” Little also testified that he visited the location of the accident and saw a lot of foot traffic around the guy wire. Little opined that the guy wire in question should have had a guy marker. During cross-examination, Entergy asked Little to define the term “exposed to traffic.” Little testified that the intent of the NESC writers was to use the dictionary definition. Entergy then produced a dictionary that defined traffic as “circulations of persons to and fro.”
¶ 11. Glen Isom, the corporate representative for Entergy, testified by deposition that he thought, “the current version of the [NESC] requires that a guy guard be installed where a guy wire is exposed to pedestrian traffic.” Isom asserted that Entergy did not violate the NESC because the guy wire was not exposed to traffic.
¶ 12. After Williams rested, Entergy made a motion for a directed verdict. The circuit judge granted Entergy’s motion because he found: (1) the guy wire was not “exposed to traffic,” and (2) there was no credible evidence that Entergy had notice that the streetlight was broken.
ANALYSIS
I. Did the circuit court err by granting a directed verdict?
A Was the unmarked guy wire a violation of Mississippi statutory law?
¶ 13. Williams argues that the circuit court erred by granting a directed verdict on his claim of negligence per se because Entergy violated Mississippi Code Annotated section ll-27-43(2)(e) (Supp.2008) and Rule 282(E) of the NESC. The Mississippi Supreme Court has recognized negligence per se and defined it as a “breach of a statute or ordinance [that] renders the offender liable in tort without proof of a lack of due care.” Palmer v. Anderson Infirmary Benevolent Ass’n, 656 So.2d 790, 796 (Miss.1995). “In order for the doctrine of negligence per se to apply, the plaintiff must show that he is a member of the class that the statute was designed to protect and that the harm he suffered was the type of harm which the statute was intended to prevent.” Thomas v. McDonald, 667 So.2d 594, 597 (Miss.1995) (citations omitted). ‘When a statute *761 is violated, the injured party is entitled to an instruction that the party violating is guilty of negligence, and if that negligence proximately caused or contributed to the injury, then the injured party is entitled to recover.” Thomas v. McDonald, 667 So.2d 594, 596 (Miss.1995) (citations omitted).
¶ 14. Mississippi Code Annotated section ll-27-43(2)(b) (Supp.2008), states:
The duty of care owed to the public by owners and operators of public utility facilities located adjacent to a highway, road, street, or bridge in this state is satisfied when: ... [w]ith respect to roads, streets and bridges that are not part of the state highway system, the public utility facilities located in a public right-of-way comply with the provisions of the applicable edition of the National Electrical Safety Code for structure placement relative to roadways.
The applicable NESC rule, Rule 282(E), which is found in the 1961 version of the code, states that “[t]he ground end of all guys attached to ground anchors exposed to traffic shall be provided with a substantial and conspicuous ... guard_” (Emphasis added). We find that Williams was a member of the class sought to be protected by Rule 282(E) and that his injury was one that the rule was designed to prevent. We must, therefore, decide whether Entergy met the requirements of Rule 282(E).
¶ 15. In his order, the circuit judge stated that Entergy did not owe Williams a duty under Rule 282(E) to place a guy marker on the guy wire because the guy wire was not “exposed to traffic.” We have recognized that “whether [a] duty exists is a question of law to be decided by the court.” State Farm Auto Ins. Cos. v. Davis, 887 So.2d 192, 194(¶7) (Miss.Ct.App.2004). Therefore, our standard of review for this issue is de novo. Dockins v. Allred, 849 So.2d 151, 154(¶ 5) (Miss.2003).
¶ 16. Little stated that the drafters of the NESC never defined the phrase “exposed to traffic.” He testified, however, that the drafters suggested that people use the dictionary meaning for this phrase. Entergy’s attorney stated that “circulations of persons to and fro” is a dictionary definition of traffic. We believe any common-sense definition for the term traffic is similar to the one provided by Entergy. Therefore, we use the same definition of traffic.
¶ 17. Williams argues that the guy wire is exposed to high traffic because there is a neighborhood convenience store and a school in the area, but activity at the store and school does not mean that the guy wire is exposed to traffic. The area where the pole is located is surrounded by streets and sidewalks so that pedestrians could get anywhere by walking down a sidewalk or street without walking around the guy wire. Williams points to the testimony of Little that the one time he viewed the area, he saw people crossing the street, but this only indicates that the street, predictably, was exposed to traffic, not the guy wire. Although Debra testified that residents of the neighborhood have previously tripped on that guy wire, there had never been a complaint filed or any incident reported to Entergy. Entergy argues that the guy wire was not exposed to traffic because it is located between the sidewalk and the curb.
¶ 18. After reviewing the evidence in this case, we find that there is insufficient evidence to reasonably conclude that the guy wire was “exposed to traffic.” Therefore, Entergy did not owe Williams a duty under Rule 282(E) to place a guy marker on the guy wire. Accordingly, we find that the circuit judge did not err by granting Entergy’s motion for a directed verdict.

*762
B. Did the circuit court err in granting a directed verdict on Williams’s claim of negligence because the guy wire was not a dangerous condition?

¶ 19. Williams also argues that the circuit court erred by granting a directed verdict on his claim of negligence because Entergy owed him a duty to protect him from the guy wire, which he argues is a dangerous condition. The Mississippi Supreme Court has stated that “utility companies only have a duty to ‘eliminate foreseeable danger.’ ” McFarland v. Entergy Miss., Inc., 919 So.2d 894, 900(¶ 16) (Miss.2005) (quoting Miss. Power & Light v. Lumpkin, 725 So.2d 721, 728-29(¶37) (Miss.1998)). Furthermore, whether a duty exists depends on “whether Entergy had notice of the dangerous condition.” Id.
¶ 20. Entergy had notice that the guy wire existed without a guy marker because Entergy installed it. This Court, however, can find little evidence in the record where any of Williams’s witnesses testified that the guy wire was a dangerous condition. Little attempted to testify that the guy wire was a dangerous condition, but the circuit judge did not allow this testimony because it was outside the scope of Little’s expert-witness report and interrogatories.[1] Debra did testify that neighborhood residents had tripped on this guy wire previously. This, however, does not prove that Entergy had notice that the guy wire was a dangerous condition. Therefore, we find that Williams did not meet his burden of establishing the duty element of his claim for negligence, and we find no error with this issue.

C. Did the circuit judge err in granting a directed verdict on Williams’s claim that Entergy negligently maintained a streetlight?

¶ 21. Williams argues that the circuit court erred when it granted a directed verdict on his claim that Entergy negligently maintained the streetlight that allegedly contributed to his accident. In his order granting Entergy’s motion for a directed verdict, the circuit judge stated:
having further concluded under the agreement by and between Entergy and the City of Greenville, that it is not incumbent upon Entergy to patrol and/or inspect for lights out, and the Court having found no credible evidence to support a finding that Entergy had any notice of lights out in the general time period until a date after the subject accident ... finds that there is a lack of credible evidence to submit any issue of fact to the jury.
Under Mississippi law, a party may be negligent for failure to properly perform a duty assumed under a contract. See Hartford Steam Boiler Inspection & Ins. Co. v. Cooper, 341 So.2d 665, 667 (Miss.1977). In his brief, Williams argues that the contract between Entergy and the City of Green-ville, which was excluded at trial,[2] creates a duty on the part of Entergy to repair and maintain streetlights. Because Williams did not make the exclusion of the contract an issue on appeal, we do not address it, but we will address Entergy’s common law duty to inspect and repair its equipment.
*763 ¶ 22. The Mississippi Supreme Court discussed in Mississippi Power Co. v. Thomas, 162 Miss. 734, 739, 140 So. 227, 228 (1932), the common law duty owed to the public by electric companies. The supreme court stated that electric companies have a duty to inspect their wires and equipment. Id. However, Thomas involved a power company’s failure to repair a low hanging power line. Id. Entergy’s duty to protect the public from downed power lines does not create a duty to inspect streetlights for lights that have burned out. Entergy did not have a duty to patrol the streets of Greenville at night-the only time when one could tell if a light was out-looking for a streetlight that is out. It is the responsibility of the City of Greenville and its citizen to report outages.
¶23. Addie and Debra testified that they had called to report the outage, but neither could say when they had called. Addie testified that when she called Enter-gy, a man told her “that he wasn’t going to put a nary another you know what light up there.” This mirrors the testimony given by her daughter, Debra, that an Entergy serviceman in the neighborhood told her that “he wasn’t going to put a nary damn light up there.” If their testimony is true, then either (1) Entergy’s standard response is that they are not going to put another damn light up, or (2) a particular repairman responds this way, and he talked to Addie on the phone and to Debra on the street. In his deposition, Isom stated that after a customer notifies En-tergy of an outage, a work ticket is generated in the work management system. According to Addie and Debra, they called Entergy about the same light at least five times prior to the accident, but Williams presented no credible evidence that Enter-gy had logged any calls about the streetlight prior to Williams’s accident. The only work order was based on Addie’s call after Williams’s accident. We find that there was insufficient credible evidence that Entergy had either direct knowledge or constructive knowledge that the streetlight was broken before the accident occurred.

II. Did the eircwit court err in excluding proof that a similar guy wire, located across the street from the guy wire at issue here, was covered with a guy marker?

¶24. Williams’s final argument is that the circuit court erred when it excluded evidence of a guy wire with a guy marker, owned by BellSouth, across the street from Entergy’s guy wire. Williams argues that this evidence is relevant because: (1) he walked by BellSouth’s guy wire without tripping; (2) it rebuts Enter-gy’s claim that the guy wire he tripped on is not “exposed to traffic” since BellSouth is also governed by the NESC; and (3) it rebuts Entergy’s claim that he was intoxicated when he fell. Entergy counters by stating that the evidence of the guy wire with the guy marker is more prejudicial than it is probative because there was no evidence of when this pole was installed and what guidelines govern it.
¶ 25. We find that Williams tried to admit evidence of custom and usage in an attempt to show that BellSouth’s guy wire was in compliance with industry standards while Entergy’s was not. The Mississippi Supreme Court has found that:
evidence of custom and usage can be a relevant consideration in determining negligence. However, we have clearly established that while relevant, custom and usage evidence is disfavored and recognized as dangerous. The danger is that the jury will define negligence simply by a departure from custom. For custom and usage evidence to be admissible, its relevancy and probative value must be clearly shown and must out *764 weigh its prejudicial effect. We review the trial judge’s decisions based on relevancy under an abuse of discretion standard.
Jones v. Jitney Jungle Stores of Am., Inc., 730 So.2d 555, 557(¶ 8) (Miss.1998) (internal citations omitted).
¶26. During his ruling, the circuit judge stated:
I don’t want to talk about BellSouth at all. Now, if you can lay the predicate some way that they become relevant and if then we get past 403, we’ll talk about it, but right now, my inclination is that the prejudicial effect of these photographs ... that the jury is going to end up saying, well, BellSouth did it; therefore, Entergy should have done it, and I don’t know if they’re under the same regs or not.
During trial, Williams did not attempt to lay the proper predicate and show that BellSouth is also governed by the NESC. On appeal, Williams has provided this Court with the applicable code section that proves BellSouth is governed under the NESC. This information, however, was not brought before the circuit judge.
¶ 27. Therefore, we agree with the circuit judge and find that this evidence, as it was presented to the circuit judge, is a violation of Mississippi Rule of Evidence 403 because Williams was not able to show, during trial, that both the Entergy guy wire and the BellSouth guy wire are governed by the NESC. Furthermore, Williams was given the opportunity to have expert testimony regarding Entergy’s compliance or lack of compliance through Little’s testimony regarding the NESC, and Williams was given the opportunity to rebut Entergy’s assertions that he was drunk during the accident because Williams was allowed to testify regarding other obstacles that he avoided while crossing the street. This issue is without merit.
CONCLUSION
¶ 28. In summary, we find that the circuit judge properly granted Entergy’s motion for a directed verdict because the absence of a guy marker was not negligence per se, the guy wire does not constitute a dangerous condition, and Entergy did not negligently maintain the streetlight. Also, we find that the circuit judge properly excluded evidence regarding Bell-South’s guy wire. Therefore, we find no error and affirm.
¶ 29. THE JUDGMENT OF THE CIRCUIT COURT OF WASHINGTON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE AND MYERS, P.JJ., CHANDLER, ISHEE, ROBERTS AND CARLTON, JJ„ CONCUR. IRVING, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. KING, C.J., AND BARNES, J., NOT PARTICIPATING.

. Williams did not make this an issue on appeal. Therefore, we do not address it.

. Even though this contract was excluded, there was testimony from Isom and Steed that Entergy had contractually assumed the duty to repair the streetlights in the City of Green-ville.